S93A0349. LAWTON v. THE STATE.
(429 SE2d 921)

BENHAM, Justice.

The jury returned verdicts of guilty but mentally ill to a five-

count indictment charging appellant with the murders of two employees of an Augusta sporting goods store, the kidnapping of the two victims, armed robbery, and possession of a firearm by a convicted felon.[1] In his lone enumeration of error, appellant contends the trial court erred when it admitted into evidence statements appellant made while in custody.

1. The State presented evidence that each of the two victims, who were found at approximately 2:00 p.m., died from a gunshot to her head, fired while she lay face-down on the floor of the store's warehouse area. The store's front door was locked, the lights were off, the backdoor security bar was not in place, and $61 was missing from the cash register. The last sales transaction recorded on the cash register was at 1:15 p.m., and was for, among other things, a sweatsuit and a pair of shoes. A United Parcel Service employee identified appellant as the store's only customer when he made a delivery to the store at 1:10 p.m., and the man he later saw counting a quarter-inch-thick stack of cash. An employee of another store in the shopping area testified he noticed the lights of the sporting goods store were off at 1:22 p.m. Several employees of a nearby motel identified appellant as the man they saw the afternoon of the murders carrying what appeared to be shoeboxes in plastic bags with the name of the sporting goods store imprinted on them. One motel employee and her husband, who noticed appellant was wearing blue jeans underneath a jogging suit, gave appellant a ride from the motel to his home, for which he paid them $5. Two unspent .32 caliber PMC bullets, a brand seldom seen by the firearms expert, were found in a shed at appellant's home, and identified by the expert as being identical to the bullet fragments removed from the victims' bodies. After his arrest, appellant made a statement in which he admitted he had robbed the store at gunpoint, had one of the victims lock the store's front door, and forced the two women to go from the showroom to the storage area where he shot them. The evidence was sufficient to authorize a rational trier of fact to conclude that appellant was guilty beyond a reasonable doubt of the crimes charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant contends the trial court erred when it determined, after a hearing held pursuant to *Jackson v. Denno*, 378 U. S. 368 (84

---

[1] The crimes occurred on October 26, 1988. Appellant was arrested on October 28, 1988, and indicted on November 22. His trial was held in Savannah, commencing on April 16, 1990, and culminating with the guilty verdicts on April 28. He was given five consecutive life sentences for the murder, armed robbery, and kidnapping convictions, and a five-year sentence for the possession conviction. His motion for new trial, filed May 9, 1990, was denied November 26, 1991. Appellant's motion for out-of-time appeal was granted on September 30, 1992, the same day his notice of appeal was filed. The case was submitted for decision by this court on January 22, 1993.

SC 1774, 12 LE2d 908) (1964), that appellant's custodial statements were freely and voluntarily given after he had made a knowing and intelligent waiver of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

At the hearing, the three police officers who questioned appellant testified that appellant was informed of his *Miranda* rights and that the ranking officer explained each right in detail because he knew that appellant had attended special education classes. The officers testified that appellant stated he understood his rights, did not appear under the influence of alcohol or drugs, was conversant, and had no trouble understanding them. Appellant signed a waiver of rights form, and told the officers that he had seen another person rob the store and shoot the women. The alleged perpetrator had then given appellant a ride home. After deciding to tape record appellant's statement, the officers re-advised appellant of his *Miranda* rights on tape, and appellant repeated his story. The officers stopped the tape, told appellant they did not believe him, re-started the tape and re-informed him of his *Miranda* rights, at which point appellant admitted he had lied and stated that he had robbed the store and shot the women to prevent future identification of him. While exiting the investigation center to show officers where he had disposed of the murder weapon, appellant noticed a couple (the motel employee and her husband) and spontaneously identified them as the people who had driven him home after the crimes. At the site where he allegedly disposed of the weapon, appellant spontaneously reiterated he had committed the crimes and expressed a desire to commit suicide. The following day, appellant, through a jailer, contacted the officers in order to speak to them. After he was again informed of his *Miranda* rights and signed a waiver form, he told the officers that another person had committed the crimes. A tape recorder was started, and an officer went over appellant's rights. When, in response to appellant's query, the ranking officer told him he could obtain a lawyer at that point, appellant stated he needed an attorney, and the officers ceased their questioning of appellant. He then spontaneously uttered that the statement he had just given was a lie and attempted to destroy the notes taken by one officer.

Three experts testified at the *Jackson-Denno* hearing. Appellant's experts, two psychologists, opined that appellant was mildly to moderately mentally handicapped; one expert stated that anyone so mentally handicapped would be incapable of understanding the *Miranda* rights, and the other stated that, after reviewing the tape recordings, appellant would not have understood the rights read to him. The State called a psychiatrist who opined that appellant was not mentally handicapped but was in the borderline range of intelligence and capable of understanding his rights if read slowly to him.

"Unless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to the admissibility of a confession will be upheld on appeal. [Cits.]" *Worthy v. State*, 253 Ga. 661 (3) (324 SE2d 431) (1985). The trial court's determination that appellant freely and voluntarily confessed to the crimes is supported by evidence presented at the *Jackson-Denno* hearing, and is not rendered clearly erroneous by the jury's determination that appellant was guilty but mentally ill. Id. See also *Donaldson v. State*, 249 Ga. 186 (5) (289 SE2d 242) (1982); *Moses v. State*, 245 Ga. 180 (5) (263 SE2d 916) (1980); *Corn v. State*, 240 Ga. 130 (3) (240 SE2d 694) (1977).

*Judgment affirmed. All the Justices concur; Clarke, C. J., not participating.*

DECIDED JUNE 7, 1993.

*Richard O. Ward,* for appellant.

*Daniel J. Craig,* District Attorney, *J. Wade Padgett,* Assistant District Attorney, *Michael J. Bowers,* Attorney General, *Matthew P. Stone,* Staff Attorney, for appellee.