A99A0909. FRANKS v. THE STATE.
(524 SE2d 545)

PHIPPS, Judge.

Donald Scott Franks was convicted of one count of burglary of a Wal-Mart layaway storage trailer behind the Wal-Mart in Canton, Cherokee County. On appeal, he enumerates four errors which raise three primary issues.

First, was the Wal-Mart storage trailer a building within the meaning of the burglary statute? Second, did the warrant authorizing the search of his home contain a valid description of the home? Third, was the evidence sufficient to authorize his conviction? Because we find against Franks on each of these questions, we affirm his conviction.

During the 1997 Christmas season, the Wal-Mart store in Canton rented storage trailers to provide extra space for items purchased on layaway. The trailers were delivered to Wal-Mart as needed. They were placed on the parking lot approximately 25 to 35 feet behind the store. The trailers were made of metal and measured 10 feet x 10 feet x 48 feet. They had no wheels but resembled trailers for an 18-wheel truck.

On the night of November 20, 1997, Wal-Mart employees found several of the trailers had been broken into. The locks had been cut. The employees found a pair of bolt cutters on the ground near the trailers. Around the time the break-ins were noticed, several employees saw a van near the trailers. They saw a man enter the van on its passenger side and a woman drive it away. Two of the employees spoke to the man before he entered the van. One of the employees recognized the man as Franks and knew where he lived.

Based upon information supplied by Wal-Mart employees, police surveilled Franks's home the next day. A van in the driveway matched the description of the one seen at Wal-Mart and had the same tag number. Eventually, Franks's wife left the residence in the van. The police followed her and observed her stop beside another van occupied by Franks and another man. The police suspected that Mrs. Franks noticed their surveillance, because later she abandoned the van and began walking. The police stopped her and the van carrying Franks and took the two of them to the van which she had abandoned.

After obtaining permission from Franks, the police searched the van and found boxes filled with new toys, clothing and tools, under a sheet in the rear of the van. The merchandise bore Wal-Mart tags, and "Wal-Mart" was written in large letters on the boxes.

Based on these events, Canton Police Detective Kevin Mantooth obtained a warrant to search Franks's home. There, the police found more new merchandise. Many items bore Wal-Mart labels, and some had Wal-Mart layaway tags. In a shed they found many still packaged toys and electronics with Wal-Mart labels, including televisions, boom boxes and video cassette recorders. Battery packs for Wal-Mart toys were being charged in the shed. The merchandise seized was taken to Wal-Mart, and a store official identified $6,000 worth of the store's property.

At trial, Franks was identified as the man seen entering the van near the layaway trailers on the night of the break-ins. His wife, who was granted immunity, testified that on that night she drove her husband to Wal-Mart, he exited in front of the store and walked around to the back and she waited ten to fifteen minutes before driving to the area of the trailers, where he loaded boxes of merchandise into the van.

1. Was the layaway trailer a building within the meaning of the burglary statute? The burglary indictment alleged that Franks "without authority and with the intent to commit a theft therein, enter[ed] a *building* to wit: a lay-away storage facility, located behind the Wal-Mart Supercenter at 1550 Riverstone Parkway, Canton, Georgia, said storage facility rented and used by Wal-Mart Supercenter # 518." (Emphasis supplied.) Franks alleges that the trial court erred in denying his motion for directed verdict, on the ground that there was insufficient evidence to establish that the layaway trailer was a building within the meaning of the burglary statute.

Georgia's criminal code defines burglary as:

> when, without authority and with the intent to commit a felony or theft therein, [one] enters or remains within the dwelling house of another or any building, vehicle, railroad car, watercraft, or other such structure designed for use as the dwelling of another or enters or remains within *any other building*, railroad car, aircraft, or any room or any part thereof.[1]

Because the statute does not define "building," we must decide whether the Wal-Mart layaway trailer was a building within the meaning of the burglary statute.

"Where our appellate courts have considered the meaning of the word 'building,' we have defined or interpreted it broadly."[2] In *Estep v. State*,[3] we held that a storehouse is a building within the meaning of the burglary statute. In this instance, the layaway trailer functioned as a storehouse for Wal-Mart. It was a roofed and walled structure on Wal-Mart's property that served the purpose of sheltering and safekeeping Wal-Mart's merchandise.

Franks asserts that this metal storehouse cannot be considered a building because it lacks some characteristics commonly associated with buildings, such as a permanent position on the space where it was built and construction with wood, brick or concrete. We held in *Smith v. State*,[4] that Georgia's burglary statute "does not limit its application to buildings of any particular type or in any particular condition." *Williams v. State*[5] underscores the point. There, we held that a chicken coop was a building and stated, "The fact that it was

---

[1] (Emphasis supplied.) OCGA § 16-7-1 (a).
[2] *Smith v. State*, 226 Ga. App. 9, 10 (485 SE2d 572) (1997).
[3] 129 Ga. App. 909, 912 (2) (201 SE2d 809) (1973).
[4] Supra at 11.
[5] 105 Ga. 814 (32 SE 129) (1898).

[e]nclosed with wire instead of [any] other material, in our judgment, makes no difference."[6]

Also there is no requirement that a building must be permanently attached to a particular ground site. The fact that the trailer could be moved without having to dislodge it from the ground did not diminish its capacity to function as a storehouse.[7] Like the storehouse in *Estep*, we find this layaway trailer is a building under the burglary statute. The trial court did not err in denying Franks's motion for directed verdict.

2. Franks asserts that the trial court erred in instructing the jury that

> [a] building is an enclosed or partially enclosed structure, manmade in whole or in part, capable of ingress or egress by a person, usually on a fixed site, designed or used for the purpose of housing or providing protection for property or persons, whether permanently or temporarily.

He claims that by incorporating the phrase "whether permanently or temporarily" into the definition, the trial court improperly shifted to him the burden to prove that the trailer was not a building. A building may be placed on a site temporarily, and the instruction did not shift any burden of proof to Franks. Further, the court instructed the jury that the State was required to prove every essential element of the offense beyond a reasonable doubt and that the burden of proof never shifted to Franks. The trial court did not err when it instructed the jury on the definition of a building.

3. Did the search warrant contain a valid description of the place to be searched? At the suppression hearing, the State presented a certified copy of the search warrant. It referred to "Exhibit A" for the particular place to be searched, but no exhibit was attached. The State also presented a certified copy of the warrant affidavit from Detective Mantooth. Like the search warrant, the affidavit referred to "Exhibit A" for the description of the place to be searched, and it did have the exhibit attached.

Mantooth testified that he submitted his affidavit, with the proposed search warrant, and "Exhibit A" to a Cherokee County magistrate. The documents were not attached to each other. According to Mantooth, the judge read all the documents, signed the warrant and made copies for Mantooth. The certified copy of "Exhibit A" has the judge's initials and the docket number assigned to the search warrant handwritten in its upper right-hand corner. Mantooth testified

---

[6] Id. at 815.
[7] See 12A CJS, Burglary, § 34.

that he then went to Franks's home to execute the warrant. He left a copy of the warrant and "Exhibit A" there. It is undisputed that "Exhibit A" accurately described Franks's residence.

Franks claims that the search of his home was illegal because the warrant did not itself describe his home and the copy of the warrant on file at the magistrate court did not have attached to it the document which described Franks's residence.

The requirement that a search warrant particularly describe the place to be searched is fulfilled if the warrant contains a description that "sufficiently permits a prudent officer executing the warrant to locate the premises, person or property [to be searched] definitely and with reasonable certainty, and without depending upon his discretion."[8] In determining whether the subject place is sufficiently described in the warrant, our courts read the warrant as a whole[9] and consider other evidence, including, but not limited to, the supporting affidavit.[10]

Descriptions appearing in warrant applications or other documents may provide the necessary particularity if the document bearing the description accompanies the warrant and the warrant expressly refers to the other document to incorporate it by reference.[11] In this instance, the warrant incorporated "Exhibit A" by reference, and, although "Exhibit A" was not stapled to the warrant, Mantooth had it with him when he executed the warrant and he left a copy at the home. Under these circumstances, we find the particularity requirement was satisfied. The trial court did not err in denying Franks's motion to suppress.

4. Was the evidence sufficient to authorize the jury to convict? Viewing the evidence, as we must, in the light most favorable to the State, we find that it was sufficient for a rational trier of fact to find beyond a reasonable doubt that Franks committed burglary.[12]

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 4, 1999.

*Cannon & Cannon, David L. Cannon, Jr.*, for appellant.

---

[8] (Punctuation omitted.) *Minter v. State*, 206 Ga. App. 692, 693 (1) (426 SE2d 169) (1992).

[9] Id.

[10] *State v. Slaughter*, 252 Ga. 435, 439 (315 SE2d 865) (1984).

[11] See *United States v. Maxwell*, 920 F2d 1028, 1031 (D. C. Cir. 1990); *Commonwealth v. Accaputo*, 380 Mass. 435, 446 (404 NE2d 1204) (1980); see also LaFave, Search & Seizure (3rd ed.), § 4.5 (a).

[12] See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Gray v. State*, 213 Ga. App. 507, 509 (1) (445 SE2d 328) (1994).

*Garry T. Moss, District Attorney, Allen D. Morris, Scott T. Poole, Assistant District Attorneys*, for appellee.