## S03A0023. LASTER v. THE STATE.
(581 SE2d 522)

HINES, Justice.

Willie James Laster appeals his convictions for malice murder and possession of a firearm by a convicted felon in connection with the fatal shooting of his business partner, Alexander Berry. Laster

challenges the convictions on numerous grounds, and we reverse because the trial court improperly restricted voir dire and the time of closing argument, and failed to properly instruct the jury regarding the return of a verdict of not guilty.[1]

The evidence construed in favor of the verdicts showed that Laster and Berry were co-owners of a car wash. The two men began to have disagreements about the manner in which the business should be operated. Specifically, Laster and Berry could not agree on who was going to run the business, and how the money would be divided. On May 6, 1995, Laster informed Berry that he was leaving the business, and packed up what he believed to be his share of the supplies; Laster made several trips back and forth from the car wash. That afternoon, Laster was seen placing a .45 caliber pistol in his pants.

Later that evening, Laster returned to the car wash. He positioned his car so that it was facing the road. Berry asked Laster to come inside the car wash to talk, but Laster wanted to remain outside. He and Berry remained outside while Tyson, an employee of the car wash, and a friend, Evans, went inside. Tyson and Evans heard gunshots coming from where they had left Laster and Berry talking. Tyson looked out the window and saw Laster firing shots in the direction of the ground, but did not see Berry being wounded. Berry's body was discovered on the ground where the shots were fired. Laster got into his car and drove away. No one else was seen in the vicinity, and no weapons were found on the victim or in the area.

Laster went to his girlfriend's home and told her that he loved her and to take their children to Sunday school. After Laster left, his girlfriend "heard a rumor" that Laster had killed Berry, and she

---

[1] The crimes occurred on May 6, 1995. On November 27, 1995, a Sumter County grand jury indicted Laster for malice murder; felony murder while in the commission of aggravated assault; aggravated assault; and possession of a firearm by a convicted felon based upon Laster's 1983 conviction for voluntary manslaughter. The case was first brought for trial before a jury on September 17, 1996, but the trial court declared a mistrial after opening statements. The grant of the mistrial and the denial of Laster's motion to dismiss on the basis of double jeopardy were affirmed by this Court on June 30, 1997. *Laster v. State*, 268 Ga. 172 (486 SE2d 153) (1997). The case was then tried before a jury January 6-9, 1998, and Laster was found guilty of all charges. On January 15, 1998, Laster was sentenced to life imprisonment for the malice murder and a concurrent five years in prison for possession of a firearm by a convicted felon. The court found that the aggravated assault merged for the purpose of sentencing and the felony murder stood vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993). Trial counsel filed a motion for new trial on Laster's behalf on February 6, 1998; new counsel filed a motion for new trial on Laster's behalf on February 9, 1998, and then amended the motion on November 1, 1999. Laster filed several pro se "Motions for Ineffective Assistance of Counsel." After a hearing on the motions for new trial and consideration of Laster's pro se filings, a new trial was denied on June 3, 2002. A notice of appeal was filed on May 30, 2002, and amended on July 1, 2002. The appeal was docketed in this Court on September 5, 2002, and the case was submitted for decision on October 28, 2002.

went to Laster's mother's house. She found many of Laster's family members sitting around talking, and some were crying.

A search of the home shared by Laster and his girlfriend revealed a half-empty box of ammunition for a .45 caliber automatic handgun, and an empty holster for a large handgun. The bullets were marked "R-P 45." Both the bullets and the holster belonged to Laster. At the murder scene, police found three spent shell casings from a .45 caliber pistol; each was marked "R-P 45."

After Laster was arrested, he asked another prisoner, who was his friend, if Berry had survived, and when he was told that Berry had died, Laster commented that he was sorry it had happened. Laster told the inmate that he had gotten tired of Berry taking all the money and doing whatever he wanted to with it.

Approximately 12 years earlier, Laster had been convicted of voluntary manslaughter.

1. The evidence was sufficient to enable a rational trier of fact to find Laster guilty beyond a reasonable doubt of the malice murder of Alexander Berry and possession of a firearm by a convicted felon. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Laster contends that the trial court erred in refusing to allow his attorney to ask three specific questions during voir dire.[2] Voir dire is the opportunity for the parties to ascertain the prospective jurors' ability to decide the case free from bias and prior inclination. *Chancey v. State*, 256 Ga. 415, 424 (3) (349 SE2d 717) (1986). However, a question is inappropriate if it requires a response which might amount to a prejudgment of the case. Id. There is not always a clear distinction between questions " 'which ask [prospective] jurors how they would decide issues of a case if and when such issues are presented and questions which merely inquire whether [they] can start the case without bias or prior inclination.' " Id. Consequently, the control of the examination of prospective jurors is vested in the sound discretion of the trial court, and will not be interfered with absent the record clearly showing an abuse of that discretion. Id.

There was no abuse of discretion in excluding the third question because it was duplicative of a general question already posed to the prospective jurors. However, the remaining questions are subject to a different analysis. The trial court disallowed the first and second questions on the basis that they involved an impermissible prejudgment of the case. Id.; *Baxter v. State*, 254 Ga. 538, 543 (7) (331 SE2d

---

[2] Defense counsel wanted to ask the potential jurors: (1) whether the extended period of time between the alleged murder and the trial would affect their deliberations; (2) whether a prior conviction of the defendant that would be presented as a similar transaction would affect their deliberations; and (3) whether there was any reason a potential juror would be unfavorably disposed toward the defendant.

561) (1985). This reasoning is sound with regard to the second question because it involved the prospective juror's consideration of the defendant's prior conviction for voluntary manslaughter, an element of the possession charge for which the defendant was on trial. However, such reasoning is not extant with regard to the first question sought to be asked. This question merely attempted to determine if the extended period of time between the commission of the charged crimes and the present trial would in any manner bias or prejudice the prospective juror's consideration of the case. As such, it was a legitimate inquiry on voir dire. *Chancey v. State*, supra at 424 (3). Accordingly, the trial court clearly abused its discretion in failing to allow it.

3. Laster contends that the trial court committed reversible error in allowing the State to introduce evidence of his 1983 conviction for voluntary manslaughter. He argues that the State failed to make the necessary showing to admit evidence of the conviction as a similar transaction. But the argument is unavailing.

It is certainly true that in order for evidence of an independent crime to be admissible as a similar transaction, the State must affirmatively show that it seeks to admit evidence of the offense for an appropriate purpose; that there is sufficient evidence that the accused committed the independent offense; and that there is sufficient connection or similarity between the independent offense and the crimes charged so that proof of the former tends to prove the latter. *Palmer v. State*, 271 Ga. 234, 239 (8) (a) (517 SE2d 502) (1999); *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991). However, in this case Laster was also charged with possession of a firearm by a convicted felon based upon his 1983 conviction for voluntary manslaughter, and the trial was not a bifurcated proceeding.[3] See *Head v. State*, 253 Ga. 429 (322 SE2d 228) (1984). Consequently, evidence of the prior conviction was admissible as substantive evidence of Laster's guilt of the firearm possession charge.

4. Laster contends that the court committed reversible error in not permitting him two hours for closing argument as provided by OCGA § 17-8-73. We agree.

Prior to closing arguments there was discussion with the trial court about the time allotment for closing arguments. At the close of the discussion, the court indicated that there was a two-hour time frame. Nevertheless, during closing arguments the court interrupted defense counsel to inform him that he had exceeded his one-hour time limit. Defense counsel responded that he was entitled to two hours of closing argument, but the trial court stated that the limit

---

[3] There is no contention that the proceeding should have been bifurcated.

was one hour. The court then granted defense counsel extra time to conclude his argument, but not the full two-hour time frame.

In *Hayes v. State,* 268 Ga. 809 (493 SE2d 169) (1997), this Court

> determined that "capital felony" as used in OCGA § 17-8-73 encompassed those murder cases in which the death penalty was not being sought, and consequently, that in such cases there is a two-hour time limit for the defendant's closing argument. Id. at 813 (7); *Monroe v. State,* [272 Ga. 201, 202 (2) (528 SE2d 504) (2000)]. This Court recognized that "[t]he right to make a closing argument to the jury is an important one, and abridgment of this right is not to be tolerated. Harm, requiring that a defendant be given a new trial, is presumed when the right is erroneously denied, and the presumption of harm, although not absolute, is not readily overcome." *Hayes v. State,* supra at 813 (7). However, this presumption of harm will not stand when the denial of the right is not complete and when the evidence of a defendant's guilt is overwhelming so as to render any other version of events virtually without belief. Id. See *Monroe v. State,* supra.

*Ricketts v. State*, 276 Ga. 466, 470-471 (579 SE2d 205) (2003).

Laster's defense was to attack the credibility of the State's witnesses and to assert that there were other explanations for how Berry died. Inasmuch as his counsel was given in excess of an hour to argue to the jury the existence of reasonable doubt, it cannot be said that Laster's right to make a closing argument was completely abridged. Id. at 471. However, while the evidence that he fired the fatal shots was certainly strong, it was not so overwhelming as to render any other version of events in which he was not the shooter virtually without belief. Compare *Ricketts v. State,* supra, in which the defendant admitted he fired the fatal shots.

5. In its charge to the jury at the conclusion of closing arguments, the trial court instructed the jury on the form of its verdict if it found Laster guilty of either malice murder or felony murder:

> If you find and believe beyond a reasonable doubt under all the evidence and the Court's instructions that the defendant is guilty of the offense of murder with malice aforethought, then you must specify such in your verdict, and the form of your verdict in that event would be, "We, the jury, find the defendant guilty of malice murder."
>
> If you believe beyond a reasonable doubt under all the evidence and the Court's instruction that the defendant is guilty of felony murder, then you must specify such in your

verdict, and the form of your verdict in that event would be, "We, the jury, find the defendant guilty of felony murder."

However, the court completely failed to instruct the jury on the form of its verdict if it had reasonable doubt about Laster's guilt of any of the charges, including possession of a firearm by a convicted felon, and thus, would be under the duty to acquit Laster.[4]

In determining whether the court's charge contained error, this Court must consider the jury instructions as a whole. *Wilson v. State*, 275 Ga. 53, 60 (4) (562 SE2d 164) (2002). And in so doing, the question becomes whether the trial court's instruction misled or confused the jury. *Duffie v. State*, 273 Ga. 314, 316 (2) (540 SE2d 194) (2001); *Shorter v. State*, 270 Ga. 280, 281 (3) (507 SE2d 757) (1998).

Here, while the trial court charged the jury on the presumption of innocence and the State's burden of proof in order to obtain a conviction, the court instructed the jury on the form of its verdict only in the event that it found Laster guilty of either malice murder or felony murder. It gave no guidance whatsoever of how the jury's verdict should read if the jury found that the State failed to carry its burden of proving Laster's guilt beyond a reasonable doubt, even though defense counsel advised the court of its omission. Thus, the jury could have easily been misled or confused about its authority to find Laster not guilty of the charges against him, or simply the mechanism for acquitting him. In fact, the jury's confusion with the critical portion of the charge relating to guilt or innocence is shown by the fact that it sent the court a question regarding reasonable doubt, and the court recharged the jury in that regard.

Consequently, we cannot find that the court's charge as a whole did not confuse or mislead the jury regarding the return of a verdict of "not guilty," on any of the charges, and Laster must be given a new trial.

6. Laster's remaining enumerations of error are either rendered moot by our determinations in Divisions 2, 4, and 5, unlikely to recur, or involve matters to be determined by the evidence and circumstances upon retrial.[5]

---

[4] The pattern charge states:

If you do not believe that the defendant is guilty (of either of these offenses), or if you have any reasonable doubt as to the defendant's guilt, then it would be your duty to acquit the defendant, in which event the form of your verdict would be, "We, the jury, find the defendant not guilty."

See Georgia Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, Third Edition, Section 1.60.10, p. 44 (2003).

[5] Laster contends that the trial court erred in failing to excuse for bias two potential jurors; in allowing a witness to testify as to the contents of a writing; in refusing to allow the court reporter to read a question back to a witness; in refusing to allow defense counsel to interview a rebuttal witness; in not allowing introduction of evidence of the victim's prior

*Judgments reversed. All the Justices concur.*

DECIDED JUNE 2, 2003.

*Donald L. Lamberth*, for appellant.

*Cecilia M. Cooper, District Attorney, Barbara A. Becraft, Cheri L. Nichols, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Jennifer S. Gill, Assistant Attorney General*, for appellee.

---

bad acts; in failing to charge the jury on voluntary manslaughter; and in making injudicious comments to defense counsel throughout the trial. He further maintains that he received ineffective assistance of trial counsel and of appellate counsel in pursuing the present appeal.