## A08A0505. MEZICK v. THE STATE.
(661 SE2d 635)

MIKELL, Judge.

Jeffery James Mezick was convicted by a Cobb County jury of criminal trespass, burglary, criminal attempt to commit theft by taking, and possession of tools for the commission of a crime, based on evidence that he and his co-defendant, Adam N. Agnese, cut the lock off the gate to the fenced premises of Agnese's employer, Reliable Hydraulics, and attempted to steal an air compressor from a storage shed. The trial court merged the latter two offenses into the first two counts and sentenced Mezick to ten years for the burglary, five to serve and five on probation, as well as twelve months for the trespass, to be served concurrently. On appeal from the order denying his motion for a new trial, Mezick enumerates four errors. We affirm.

1. Mezick first contends that the trial court erred in admitting his incriminating statement into evidence. The trial court conducted a *Jackson-Denno* hearing and found that the statement was freely and voluntarily made.[1] "Unless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to the admissibility of a confession will be upheld on appeal."[2] The evidence supports the trial court's determination. Prior to interviewing Mezick, Detective Mitchell Plumb of the City of Smyrna Police Department, who has held that position for 17 years, advised Mezick of his *Miranda* rights, carefully explained those rights to him when Mezick first said that he did not understand them, and witnessed him sign the waiver of rights form. Plumb testified that he did not threaten, coerce, or offer Mezick any hope of benefit in exchange for giving a statement; that they took a break in the middle of the interview, and Plumb offered Mezick water to drink; that after being advised of his rights, Mezick gave a statement; and that Mezick was not under the influence of intoxicants. After making a statement, Mezick asked Plumb whether he needed an attorney; Plumb said that it was up to Mezick and terminated the interview. The interview lasted approxi-

---

[1] Defense counsel did not waive appellate review of the issue by failing to renew at trial the objection to the admission of Mezick's statements following the adverse ruling at the *Jackson-Denno* hearing. *Simpson v. State*, 277 Ga. 356, 357 (2) (589 SE2d 90) (2003).

[2] (Citation and punctuation omitted.) *Lawton v. State*, 263 Ga. 168, 171 (2) (429 SE2d 921) (1993). Accord *Raulerson v. State*, 268 Ga. 623, 626-627 (2) (b) (491 SE2d 791) (1997); *Bryant v. State*, 286 Ga. App. 493, 497 (2) (649 SE2d 597) (2007).

mately one hour.

Based on Plumb's testimony, the trial court found that the statement was freely and voluntarily made, finding particularly noteworthy Plumb's testimony that he stopped the interview to make sure that Mezick understood his rights. "This Court will not interfere with findings of the trier of fact where, as here, there is evidence to support the factual findings."[3] The trial court's finding that the statement was admissible is supported by the detective's testimony and the signed *Miranda* waiver. It was not error to admit the statement.

Mezick argues that the trial court failed to take into account his "obvious inability to understand the seriousness of the matter." We note, however, that a mental evaluation ordered by the trial court revealed that Mezick has an average IQ and is neither mentally nor cognitively impaired. Even if Mezick was slow to understand his rights, this did not render his confession inadmissible.[4] Mezick also argues that the trial court should have applied the nine-part test utilized in *State v. Wilson*[5] for determining whether a statement is voluntary under the totality of the circumstances. However, our Supreme Court recently clarified in *Vergara v. State*[6] that the nine-factor analysis applies only when determining the voluntariness of juvenile confessions given outside the presence of the juvenile's parents and does not apply to confessions of adults.[7] In so doing, the Court overruled *Wilson* and other cases to the extent that they held or implied otherwise.[8] As Mezick was not a juvenile at the time he made an incriminating statement, the trial court did not err in failing to apply the test in question. Additionally, we note that *Wilson* is distinguishable on its facts, as the defendant in that case was never advised of his *Miranda* rights.[9]

2. Mezick next challenges the sufficiency of the evidence to support his conviction of burglary. First, Mezick contends the structure in which the air compressor is located is not a "building" within the meaning of the burglary statute, OCGA § 16-7-1 (a),

---

[3] (Footnote omitted.) *Montgomery v. State*, 287 Ga. App. 382, 384 (2) (651 SE2d 491) (2007).

[4] See *Raulerson*, supra at 627 (2) (b) (appellant's "reading ability, even if limited, did not render his confession inadmissible") (citation omitted); *Lawton*, supra (trial court's determination that appellant freely and voluntarily confessed to the crimes was not rendered clearly erroneous by the jury's determination that appellant was guilty but mentally ill).

[5] 257 Ga. App. 120, 124-125 (570 SE2d 409) (2002).

[6] 283 Ga. 175 (657 SE2d 863) (2008).

[7] Id. at 177 (1).

[8] Id.

[9] *Wilson*, supra at 126 (1).

because it is not attached to the main building and is open on one side. We disagree.

OCGA § 16-7-1 (a) pertinently provides that

> [a] person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within . . . any building . . . , or other such structure designed for use as the dwelling of another or enters or remains within *any other building*, . . . or any room or any part thereof.[10]

"Georgia's burglary statute is very broad and does not limit its application to buildings of any particular type."[11] For purposes of the statute, a "building" has been defined as "a structure in the nature of a house built where it is to stand; as commonly understood, a house for business, residence, or public use, or for shelter of animals or storage of goods."[12] "[W]hen determining whether a particular structure is a 'building' for purposes of the statute, we look at, among other things, the purpose of the structure, and the statute is commonly understood to apply to 'shelter of animals or storage of goods.'"[13] Thus, in *Garrett v. State*,[14] a structure that had a metal roof but was open on three sides was used to store commercial goods, and was attached to the main building qualified as a "building" within the meaning of the statute.[15] Similarly, in *Franks v. State*,[16] a trailer with a roof and walls that was located on Wal-Mart's property and served the purpose of sheltering and safekeeping layaway merchandise was classified as a "building."[17] Further, in *Floyd v. State ("Floyd II")*,[18] a Wal-Mart garden center "enclosed with chain link fence and partly enclosed with an unmortared block wall[ ] [constituted] a room or part of a building within the meaning of [OCGA] § 16-7-1."[19]

The structure in the case at bar was described in trial testimony as a "giant wooden shed" containing steel racks on which air

---

[10] (Emphasis supplied.)

[11] (Punctuation and footnote omitted.) *Garrett v. State*, 259 Ga. App. 870, 871 (1) (578 SE2d 460) (2003).

[12] (Citation and punctuation omitted.) *Smith v. State*, 226 Ga. App. 9, 10-11 (485 SE2d 572) (1997) (unfinished house is a "building" within the meaning of OCGA § 16-7-1 (a)).

[13] (Footnotes omitted.) *Garrett*, supra.

[14] Id.

[15] Id.

[16] 240 Ga. App. 685 (524 SE2d 545) (1999).

[17] Id. at 687 (1).

[18] 207 Ga. App. 275 (427 SE2d 605) (1993).

[19] Id. at 281 (1). See also *Williams v. State*, 105 Ga. 814, 815 (32 SE 129) (1898) (wire-enclosed chicken house fell within the definition of a "building").

compressors are stored. The evidence, testimonial and photographic, shows that it has a roof and is enclosed on three sides, although the front "is completely open, like bays." The storage shed is separated from the main business by a courtyard, but the entire compound is locked and inaccessible after hours; the rear of the property is fenced, with a locked gate; and the compound is protected by a security alarm, which went off silently when the defendants entered the shed. The purpose of the shed, as in *Garrett* and *Franks,* is to store, shelter, and safeguard commercial goods, and, like the storage shelter in *Garrett*,[20] the shed is inaccessible to the public when the business is secured. Accordingly, the shed constitutes a "building" within the meaning of the burglary statute.[21]

*Floyd v. State* ("*Floyd I*"),[22] upon which Mezick relies, is distinguishable. In *Floyd I*, the defendant argued that theft by taking of a golf cart, which was removed from a fenced area on the property of a country club, was a lesser included offense of the burglary of the clubhouse, and therefore that he should not have been convicted of the lesser offense. This Court disagreed, holding that the theft by taking "was a separate offense and not included in the burglary offense."[23] As we noted in the unrelated case of *Floyd II*, "there is no indication in the *Floyd [I]* opinion that this court considered the question of the nature of the enclosure surrounding the golf cart as part of its determination that the theft by taking was not a lesser included offense [of burglary]."[24] *Floyd I* is thus inapposite.

Mezick also contends that the evidence established, at most, his mere presence at the scene of the crime. Again, we disagree. "Mere presence at the scene of a crime is insufficient to convict one of being a party to the crime, but presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred."[25] Here, Mezick admitted that he was present at the scene, so we consider the evidence of his participation in the criminal intent.

Viewed in the light most favorable to the verdict, the evidence shows that at 3:28 a.m. on March 9, 2006, an alarm went off on the premises of Reliable Hydraulics. Police officers were immediately

---

[20] Supra.

[21] Compare *Redfern v. State*, 246 Ga. App. 572, 575 (540 SE2d 701) (2000) (2,000-foot-high television broadcast tower was not a "building" within the meaning of the burglary statute because the purpose of the tower was to provide a tall structure from which the broadcast signal could emanate, not to provide shelter for people, animals, or goods).

[22] 186 Ga. App. 777 (368 SE2d 541) (1988).

[23] Id. at 778 (2).

[24] *Floyd II*, supra.

[25] (Citation and punctuation omitted.) *Williams v. State*, 205 Ga. App. 397 (1) (422 SE2d 438) (1992).

dispatched to the scene. They found Agnese inside the storage shed. Mezick was hiding behind Agnese's truck, which had been backed into the shed. The truck's engine was running, its lights were out, and all the doors were wide open. A police scanner, which was turned on, two flashlights, and a pair of bolt cutters were found in the truck. The bolt cutters were three feet long and weighed approximately three pounds.

Agnese testified that he had gone to Mezick's house earlier that evening, and the men decided to go to Reliable Hydraulics "to pick up an air compressor." En route, the men stopped by Agnese's house to pick up a pair of bolt cutters because "the fence in the back has got a lock and chain on it." When they arrived at the premises, Agnese parked the truck beside the fence and tried to cut the lock but could not, so Mezick helped him. Agnese then drove through the gate to the back of the building and backed into a bay where the air compressors were stored. Agnese testified that while in the shed, he and Mezick were "manhandling the air compressor, as in like, turning it sideways so that it would fit under the shelving to get it to the truck."

Mezick admitted that he put a lock and a police scanner in Agnese's pickup truck before going to Reliable Hydraulics. Mezick knew that Agnese "wanted a lock to go back on the gate" but denied helping Agnese cut the lock. Mezick admitted, however, that he rode with Agnese through the gate and traveled 50 yards to the inside of the storage shed. Mezick claimed he did not assist Agnese in "manhandling" the air compressor, although he admitted standing on the rack where it was located. During his investigation, Plumb discovered that the compressor, which weighed about 600 pounds, had been moved about three feet.

The jury was authorized to infer from the evidence recited above that Mezick participated in breaking into the premises of Reliable Hydraulics and attempting to steal an air compressor. Accordingly, the evidence presented was sufficient to authorize a rational trier of fact to find Mezick guilty beyond a reasonable doubt as a party to the crime of burglary.[26]

3. Mezick contends that he is entitled to a new trial because the trial court erred in its charge on Count 4, possession of tools for the commission of a crime, by failing to give the complete instruction on the duty to render a not guilty verdict if the state failed to prove guilt beyond a reasonable doubt. As noted above, however, the trial court ruled at the sentencing hearing that Count 4 merged into Count 1. "A conviction which is merged into another as a matter of fact or law

---

[26] See *Mitchell v. State*, 271 Ga. App. 711, 713 (1) (610 SE2d 672) (2005).

is void."[27] As the conviction on Count 4 is void, Mezick cannot show that he was harmed by an erroneous jury instruction on that charge. "Harm as well as error is necessary before reversible error is shown."[28]

Moreover, even if the conviction had not been merged, a new trial would not be required. The transcript reveals that as to the first three counts, the trial court gave the pattern charge on reasonable doubt, as follows:

> If you do not believe the Defendant is guilty, or if you have any reasonable doubt as to the Defendant's guilt, then it would be your duty to acquit the Defendant, in which event the form of your verdict would be, "We, the jury, find the defendant . . . not guilty. . . ." *And that applies to each count.*[29]

On Count 4, however, after defining the crime of possession of tools for the commission of a crime, the court did not repeat the "reasonable doubt" language. Instead, the court stated: "And, again, you would render a guilty or not guilty verdict under the evidence as you find it to be."

In arguing that this charge is reversible error, Mezick cites *Laster v. State.*[30] In *Laster,* however, the "court completely failed to instruct the jury on the form of its verdict if it had reasonable doubt about [the defendant's] guilt of any of the charges," including malice murder, felony murder, or possession of a firearm by a convicted felon.[31] Thus, the Supreme Court reasoned, "the jury could have easily been misled or confused about its authority to find [the defendant] not guilty of the charges against him, or simply the mechanism for acquitting him."[32] In fact, the jury in *Laster* was confused about the burden of proof, as it sent a judge a question regarding reasonable doubt.[33]

*Laster* is distinguishable. "It is a fundamental rule in this [s]tate . . . that jury instructions must be considered as a whole in

---

[27] *Merritt v. State,* 288 Ga. App. 89, 91 (1) (653 SE2d 368) (2007), citing *Curtis v. State,* 275 Ga. 576, 577 (1) (571 SE2d 376) (2002).

[28] (Citation omitted.) *Manley v. State,* 191 Ga. App. 376, 377 (381 SE2d 592) (1989).

[29] (Emphasis supplied.) See Georgia Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, Fourth Edition, Section 1.60.10 (2007).

[30] 276 Ga. 645 (581 SE2d 522) (2003).

[31] (Footnote omitted.) Id. at 650 (5).

[32] Id.

[33] Id.

determining whether there was error in the charge."[34] Here the judge gave the pattern charge on reasonable doubt and the form of the verdict for acquittal three times. The court explained that the burden of proof beyond a reasonable doubt applied to each count, and the court instructed the jury at the outset that "[n]o person shall be convicted of any crime unless and until each element of the crime, as charged, is proven beyond a reasonable doubt." There was no possibility of juror confusion on the burden of proof in this case. Mezick, however, cites the fact that the jury asked a question regarding Count 4 as evidence of such confusion. But the jury's question related to whether Mezick had to be in possession of some or all of the tools listed in the indictment in order to be found guilty on Count 4. The question did not evidence confusion about the burden of proof.

4. Finally, Mezick argues that the trial court erred in ordering him to pay $3,000 in restitution to the Cobb General Fund for the costs of his court-appointed attorney as a condition of his probation. As he concedes in his appellate brief, this contention is controlled adversely to him by *State v. Pless*.[35]

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED APRIL 23, 2008.

*Brock, Clay, Calhoun & Rogers, Nancy I. Jordan*, for appellant.
*Patrick H. Head, District Attorney, Dana J. Norman, Erman J. Tanjuatco, Assistant District Attorneys*, for appellee.

---

[34] *Lindo v. State*, 278 Ga. App. 228, 238 (4) (d) (628 SE2d 665) (2006).
[35] 282 Ga. 58-59 (646 SE2d 202) (2007).