### A10A0678. ARNOLD v. THE STATE.
(699 SE2d 77)

DOYLE, Judge.

Following a jury trial, Ricky Arnold appeals from his conviction of aggravated child molestation,[1] attempted aggravated child molestation,[2] child molestation,[3] and aggravated sexual battery,[4] contending that (1) the evidence was insufficient as to certain counts, (2) the trial court erroneously denied his special demurrer to the indictment, (3) the trial court erred by admitting a prior consistent statement of a witness, (4) the trial court erroneously admitted bad character evidence, (5) the State misstated the evidence in a question on cross-examination, (6) the jury was improperly charged as to the form of its verdict, and (7) the trial court's charge on "mere presence" improperly expressed the court's opinion on the evidence. For the reasons that follow, we affirm.

Construed in favor of the verdict,[5] the evidence shows that Arnold periodically entered his stepdaughter's bedroom late at night and fondled her breasts and vagina, performed oral sex on her, and attempted to force her to perform oral sex on him. The abuse occurred over the two- to three-year period leading up to the sixteenth birthday of the victim, A. M., and it stopped shortly thereafter in August 2005, when A. M.'s mother discovered Arnold by A. M.'s bed with his underwear down.[6]

In a six-count indictment, Arnold was accused of crimes based on the abuse, and a jury found him guilty of four of the counts.[7] Following the denial of his motion for new trial, Arnold appeals.

1. Arnold contends that the evidence was insufficient to support the guilty verdict as to aggravated child molestation (Count 1) and

---

[1] OCGA § 16-6-4 (c).

[2] Id.; OCGA § 16-4-1.

[3] OCGA § 16-6-4 (a) (1).

[4] OCGA § 16-6-22.2 (b).

[5] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

[6] Arnold was married to the victim's mother at the time. They have since divorced.

[7] The trial court directed a not guilty verdict on one of the counts; the jury found Arnold not guilty of another.

attempted aggravated child molestation (lesser included as to Count 2) as alleged in the indictment. Viewed under the appropriate standard of review, the record shows otherwise.

(a) *Aggravated child molestation.* The indictment accused Arnold of committing aggravated child molestation by "plac[ing] his mouth upon the sex organ of [A. M.], a child under the age of 16 years, with the intent to arouse and satisfy the sexual desires of the accused. . . ." Arnold contends that the evidence failed to show that he committed the act before A. M. turned 16. He relies on A. M.'s statement on re-direct examination, two years after the abuse, in which she stated that Arnold did not put his mouth on her sex organ until "shortly after" she was sixteen. However, A. M.'s testimony also revealed that she had only been sixteen for approximately one month before Arnold was discovered by her mother, and the abuse had been ongoing for two to three years. A. M. further testified that Arnold had first abused her by touching her breasts, but "[i]t eventually got to where he would do more things, . . . where he'd put his finger inside me and then his tongue." A. M. explained that this had occurred at least twice a week over the preceding years, and that Arnold would "do the same thing every night," including "go to my private area and tongue it."

When we review a challenge to the sufficiency of the evidence,

> the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.[8]

Further,

> it is not the function of this Court to re-weigh the evidence or to determine the credibility of the witnesses[.] The weight and credibility of witnesses are questions for the triers of fact; that some evidence offered by a witness seems

---

[8] (Citation omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

contradictory to his own or to some other's, or incomplete or uncertain, does not automatically discredit the evidence given by that witness for it is the function of the triers of fact to determine to what evidence it gives credence. It is not for us to determine or question how the jury resolved any apparent conflicts or uncertainties in the evidence.[9]

Based on these standards, we hold that A. M.'s testimony — including that the abuse was long term and ongoing, that it had escalated to include oral sex, and that Arnold had generally done the same thing on each occasion — was sufficient to authorize the jury to find Arnold guilty of Count 1.[10]

(b) *Attempted aggravated child molestation.* Count 2 of the indictment accused Arnold of committing aggravated child molestation by "plac[ing] his sex organ upon the mouth of [A. M.], a child under the age of 16 years, with the intent to arouse and satisfy the sexual desires of the accused. . . ." At trial, A. M. testified that Arnold "would try to put his private in [her] mouth," but she would not let him, and that Arnold tried to "place his sex organ . . . [tried] to put it in [A. M.'s] mouth."

Arnold moved for a directed verdict on Count 2 arguing that the evidence did not show that he committed Count 2, only that he attempted it. The trial court denied the motion, and the jury later found Arnold not guilty of aggravated child molestation but guilty of the lesser included charge of attempted aggravated child molestation.

Arnold now argues that he could not be convicted of criminal attempt, relying on *Legg v. State*,[11] which reversed a trial court's denial of a directed verdict because a fatal variance existed between the facts alleged in the indictment and those proven at trial. This conclusion was based on the fact that "the victim did not indicate that appellant had done anything more than to *attempt*" an act involving the sex organs of the accused and the mouth of the victim.[12]

However, it is not clear in *Legg* that the jury was instructed as to the lesser included offense of criminal attempt, as was done here, and the defendant in *Legg* was actually convicted of the greater offense despite evidence showing only an attempt.[13] Here, by contrast, Arnold was convicted only of the offense of criminal attempt, which

---

[9] (Citations and punctuation omitted.) *Green v. State*, 293 Ga. App. 752, 754 (1) (667 SE2d 921) (2008).

[10] See id.

[11] 207 Ga. App. 399 (428 SE2d 87) (1993).

[12] (Punctuation omitted; emphasis in original.) Id. at 401 (4).

[13] See id.

was supported by the evidence. Because "[a] person charged with commission of a crime may be convicted of the offense of criminal attempt as to that crime without being specifically charged with the criminal attempt in the accusation, indictment, or presentment,"[14] Arnold could be convicted of the lesser included offense of criminal attempt pursuant to a proper jury instruction. Therefore, we do not find *Legg* controlling, and we discern no error.[15]

2. Arnold contends that the trial court erred by denying his pre-trial special demurrer with respect to Counts 1, 2, and 3 of the indictment, which alleged that the offenses occurred "between July 24, 2002[,] and July 24, 2005," because the indictment did not allege a specific date on which the crimes were committed.

> Generally, an indictment which fails to allege a specific date on which the crime was committed is not perfect in form and is subject to a timely special demurrer. [However, t]his Court has recognized an exception to this rule where the evidence does not permit the [S]tate to identify a single date on which the offense occurred.[16]
>
> [E]vidence that the victim is a minor who is incapable of adequately articulating exactly when the offense occurred is a factor the trial court can take into account in determining whether the [S]tate carried its burden of showing that it cannot establish a specific date or time frame in which the offense or recurring offenses occurred. . . .[17]

Here, prior to trial, the trial court held a hearing and found that the State "presented evidence in support of its arguments that the alleged victim does not know the exact dates of the alleged offenses and that the alleged victim is a minor who is incapable of adequately articulating exactly when the offense occurred." The record does not include a transcript (or authorized substitute) of this hearing, and absent these, we must presume that the trial court's evidentiary findings were correct.[18] Furthermore, there was trial evidence showing that A. M. was a minor at the time of the offenses, that A. M. could not recall specifically when the offenses occurred, that the

---

[14] OCGA § 16-4-3.

[15] See, e.g., *English v. State*, 301 Ga. App. 842, 843 (689 SE2d 130) (2010) (evidence sufficient to support conviction for attempted sodomy because defendant "forced the victim's mouth into close proximity with his sex organ").

[16] *Blackmon v. State*, 272 Ga. App. 854 (614 SE2d 118) (2005).

[17] Id. at 855.

[18] See *Eason v. State*, 249 Ga. App. 738, 739 (1) (549 SE2d 532) (2001) ("in the absence of a transcript, we must assume as a matter of law that the evidence adduced at the hearing supported the trial court's findings").

abuse occurred on at least a weekly basis over the two or three years leading up to August 2005, and that A. M. kept no diary or calendar that might aid her memory. Under these circumstances, we discern no error.[19]

3. Arnold next contends that the trial court erred by admitting as a prior consistent statement an investigator's summary of A. M.'s out-of-court statement. We disagree.

During the State's case-in-chief, the State called a sexual abuse investigator who participated in an interview of A. M. on the night Arnold was discovered in her room. On cross-examination, Arnold elicited the fact that the interviewer's specialized training occurred after she interviewed A. M. On re-direct, apparently to demonstrate the reliability of the interview technique, the State asked the investigator to read her summary of the interview with A. M.[20] Arnold made a hearsay objection, and the State argued that the summary was admissible as a prior consistent statement by A. M., based on Arnold's previous challenge to her credibility on the stand. The trial court overruled the objection, and Arnold now asserts that this was error.

> A witness's prior consistent statement is admissible only where: (1) the veracity of a witness's trial testimony has been placed in issue at trial; (2) the witness is present at trial; and (3) the witness is available for cross-examination. A witness's veracity is placed in issue so as to permit the introduction of a prior consistent statement if affirmative charges of recent fabrication, improper influence, or improper motive are raised during cross-examination. Even then, to be admissible to refute the allegation of recent fabrication, improper influence, or improper motive, the prior statement must predate the alleged fabrication, influence, or motive.[21]

Here, each of the above prerequisites were met except that the prior statement did not predate the alleged fabrication, influence, or motive. Arnold argued that A. M.'s mother influenced A. M. to fabricate a molestation story to retaliate against Arnold for leaving the marriage and to allow the mother access to Arnold's ATM card

---

[19] Cf. *Berman v. State*, 279 Ga. App. 867, 872 (6) (632 SE2d 757) (2006) (special demurrer would not be successful because the record shows that the victim could not recall the exact dates when the events alleged in the indictment occurred).

[20] The interview was not recorded or transcribed; the investigator's summary was the only record of the interview.

[21] (Citations and punctuation omitted.) *Duggan v. State*, 285 Ga. 363, 366 (2) (677 SE2d 92) (2009).

while Arnold was in jail.[22] Therefore, A. M.'s initial statement to an investigator did not necessarily predate any alleged influence by A. M.'s mother.

Nevertheless, even if a trial court erroneously admits a witness's prior consistent statement that is hearsay, the error is reversible only "if it appears likely that the hearsay contributed to the guilty verdict."[23]

> In making this determination, we may not rely on the fact that [A. M.] gave testimony at trial that was consistent with the prior statement that should not have been introduced, as the very nature of the error in admitting the prior consistent statement is that it is repetitive of that to which the witness has already testified.[24]

Based on the record before us, even without relying on A. M.'s trial testimony, we conclude that the admission of the investigator's summary of A. M.'s prior statement was not reversible error. The record contained other unchallenged testimony (by witnesses other than A. M.) conveying (1) the content of A. M.'s prior statement and (2) that her prior statement was consistent with her trial testimony. For example, before the summary of A. M.'s prior statement was read, the investigator had already testified, without objection, that during the interview A. M. recounted "the type of things that she recounted here [at trial]," which included that Arnold "had been rubbing her back and touching her breasts, and [that he had] put his hand and mouth on her private area." The investigator also testified, again without objection, that in a second conversation the next day "based on the information she had given me" in the interview, A. M. "answered according to what she had already told me," and that those answers were consistent with A. M.'s trial testimony. In light of these unchallenged revelations, we conclude that it is not likely that the subsequent admission of A. M.'s statement itself contributed to the guilty verdict. By the time the statement was read, any bolstering effect of the repetitive nature of the prior statement had occurred without objection. Therefore, the admission of the interview summary does not require a reversal of Arnold's conviction.

4. Arnold contends that the trial court erred by allowing the State, over his objection, to cross-examine Arnold's biological daughter about having previously worked as a stripper and having abused

---

[22] The mother did use Arnold's ATM card to pay bills before Arnold was released on bail.

[23] (Punctuation omitted.) *Baugh v. State*, 276 Ga. 736, 739 (2) (585 SE2d 616) (2003).

[24] (Punctuation omitted.) *Duggan*, 285 Ga. at 366-367 (2).

drugs. Arnold argues that this improperly put at issue the witness's character, and by association, his own character.

As a general rule, evidence of a criminal defendant's bad character is not relevant and inadmissible.[25] Further, a witness's credibility generally may be impeached only by "offering evidence of the *witness's bad character* in the form of reputation," subject to certain limitations, including that the "evidence may refer only to character for truthfulness or untruthfulness."[26] However, the defendant may open the door to bad character evidence if he intentionally elects to put his character at issue,[27] and a witness may be impeached by disproving the facts to which she testifies.[28] "Whether the defendant has intentionally opened the character door is a matter for the trial court to determine,"[29] and "the trial court's evidentiary decisions will not be disturbed on appeal absent an abuse of discretion."[30]

Here, after the State rested, Arnold's counsel called Arnold's daughter to testify on Arnold's behalf. During his direct examination, Arnold's counsel engaged in the following line of questioning:

Q: *What kind of father is Ricky [Arnold]?*
A: We have been close like all of my life and, to me, *he's been a great father.* I mean, that's all I can say. *He's been a good dad.*
Q: Okay. *Did y'all go to church?*
A: Yes. *Well, he did, and I did too some.* But not all the time.
Q: Okay. When you were living there *was he going to church?*
A: Yes, *every week.*
Q: Was anybody going with him?
A: I think that him and [A. M.'s mother] and the kids went some[,] and I went some. There was pretty much, I mean, everybody went if they wanted to.[31]

---

[25] See OCGA § 24-2-2.

[26] (Emphasis supplied.) OCGA § 24-9-84.

[27] See *Newton v. State*, 296 Ga. App. 332, 338 (4) (674 SE2d 379) (2009); *Merritt v. State*, 288 Ga. App. 89, 100 (3) (653 SE2d 368) (2007) (decided under former OCGA § 24-9-20 (b) which included a provision – removed in 2005 – prohibiting the admission of general bad character or prior convictions to impeach a testifying criminal defendant, unless defendant first raised character issue). See also *Walsh v. State*, 283 Ga. App. 817, 821 (2) (c) (642 SE2d 879) (2007) (defendant's testimony referencing a prior conviction opened the door to evidence of his probation conditions under the prior conviction).

[28] See OCGA § 24-9-82.

[29] *Merritt*, 288 Ga. App. at 99 (3).

[30] Id. at 100 (3).

[31] (Emphasis supplied.)

"Since the only conceivable purpose of these questions was to elicit testimony concerning [Arnold's and the witness's] character, we cannot say that the trial court erred when it held that the State could introduce rebuttal evidence on the same subject."[32] "A witness may be impeached by disproving facts to which he has testified. Even evidence that would be inadmissible if offered to impeach the defendant's character may be admissible to impeach the veracity of a witness."[33] "What is forbidden is the State's introduction *in the first instance* of evidence whose *sole probative value* is that it tends to show a defendant's bad character."[34] The evidence at issue here was offered by the State in rebuttal to the witness's testimony after the defendant intentionally elicited the testimony as to the defendant's and the witness's own good character. Accordingly, we discern no abuse of the trial court's discretion in admitting the rebuttal evidence.

5. Arnold's next enumeration focuses on the State's cross-examination of Arnold's expert witness, who opined about an alleged failure to properly document the preliminary interview of A. M. In that examination, the State asked the expert, "Now are you aware that the alleged interview that you talked about with Deputy Lutz ... that there's been testimony that the 'interview' with him was asking her name and some preliminary stuff and she didn't want to respond?" Arnold objected because he previously impeached Deputy Lutz by showing him his report and eliciting testimony that he did ask and A. M. did answer more substantive questions. The trial court overruled Arnold's objection and allowed the question.

OCGA § 24-9-64 provides that all parties to a criminal proceeding are entitled to a thorough, sifting cross-examination as to the witnesses called against him. The scope of cross[-]examination rests largely within the discretion of the trial judge, and his discretion will not be controlled by the reviewing court unless abused.[35]

---

[32] *Donaldson v. State*, 279 Ga. App. 407, 409 (1) (631 SE2d 443) (2006) (questions about a defendant's churchgoing opened the door to rebuttal evidence in the form of driver's license suspensions and insurance cancellations; decided under former OCGA § 24-9-20 (b)). See also *Newton*, 296 Ga. App. at 338 (4); *Hill v. State*, 243 Ga. App. 124, 127-128 (532 SE2d 491) (2000) (defense counsel's questions about defendant's nature as a father "amounts to evidence of good character" opening the door to specific rebuttal evidence; decided under former OCGA § 24-9-20 (b)).

[33] (Punctuation omitted.) *Merritt*, 288 Ga. App. at 100 (3) (addressing former OCGA § 24-9-20 (b)).

[34] (Emphasis supplied.) *Mathis v. State*, 192 Ga. App. 772, 773-774 (3) (386 SE2d 582) (1989).

[35] (Punctuation omitted.) *Nuckles v. State*, 207 Ga. App. 63 (2) (427 SE2d 54) (1993).

The transcript reveals that the State's question did not inaccurately characterize the prior testimony, nor refer to facts not in evidence, because there was testimony that the interview consisted of nothing more than asking the victim her name and other preliminary information. That Arnold was able to later educe testimony to the contrary did not make the question improper as stated. In light of the evidence in the record, we discern no abuse of discretion.

6. With respect to the trial court's instruction on the form of the verdict, Arnold contends that the trial court erred in failing to repeat its instruction charging the jury with the duty to find guilt, if at all, beyond a reasonable doubt. We disagree.

After instructing the jury on the presumption of innocence and the State's burden to prove each element of the indicted offenses beyond a reasonable doubt, the trial court gave the following charge as to the form of the verdict:

> Ladies and gentlemen, if, after considering the testimony and the evidence presented to you, together with the charge of the Court, you should find and believe beyond a reasonable doubt that the defendant is guilty of the offenses charged then the form of your verdict would be, We, the jury, find the defendant guilty.
>
> If you do not believe that the defendant is guilty, then the form of your verdict would be, We, the jury, find the defendant not guilty.

Arnold unsuccessfully objected to the fact that the court did not explicitly include language such as the following, found in the pattern jury charge: "If you do not believe that the defendant is guilty, . . . *or if you have any reasonable doubt as to the defendant's guilt*, then it would be your duty to acquit the defendant, in which event the form of your verdict would be, 'We, the jury, find the defendant not guilty.' "[36]

On appeal, Arnold relies on *Laster v. State*,[37] to argue that omitting the language emphasized above was reversible error. However, in *Laster*, the trial court failed to give any instruction to the jury whatsoever as to what form its verdict would take if it found the defendant not guilty, instead only instructing the jury as to the form of a guilty verdict.[38] Here, by contrast, the trial court did instruct the jury as to how to formulate its verdict upon a finding of not guilty,

---

[36] (Emphasis supplied.) Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 1.60.10 (4th ed. 2007).

[37] 276 Ga. 645 (581 SE2d 522) (2003).

[38] See id. at 650 (5).

and, reading the charge as a whole, the jury was sufficiently instructed regarding the State's burden of proof and each juror's duty to acquit if he or she held a reasonable doubt.

> Where a charge as a whole substantially presents issues in such a way as is not likely to confuse the jury even though a portion of the charge may not be as clear and precise as could be desired, a reviewing court will not disturb a verdict amply authorized by the evidence. There is no error where it is unlikely that the instructions considered as a whole would mislead a jury of ordinary intelligence. Accordingly, we discern no reversible error here.[39]

7. Finally, Arnold contends that the trial court's failure to make a requested change to the pattern jury charge on mere presence resulted in an expression of the court's opinion as to what had been proved, in violation of OCGA § 17-8-57. That Code section provides that "[i]t is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused." Arnold requested the trial court to give the following modified version of the pattern jury charge on mere presence, with Arnold's material modifications emphasized:

> I charge you that the mere presence of a person at the scene of the *alleged* commission of a crime at the time of its *alleged* perpetration, without more, will not authorize a jury to find the person who was merely present guilty of consent in, and concurrence in, the commission of the *alleged* crime, unless the evidence shows, beyond a reasonable doubt, that such person committed the alleged crime, helped in the actual perpetration of the crime, or participated in the criminal endeavor.[40]

At trial, over Arnold's objection, the court declined to give Arnold's requested charge, instead giving the following charge:

> Ladies and gentlemen, the jury is not authorized to find a person who was merely present at the scene of the commis-

---

[39] (Citation and punctuation omitted.) *Pincherli v. State*, 295 Ga. App. 408, 416 (3) (c) (671 SE2d 891) (2008).

[40] Compare Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 1.43.30 (4th ed. 2007).

sion of the crime at the time of its perpetration guilty of consent in or concurrence in the commission of the crime unless the evidence shows beyond a reasonable doubt that the person committed the alleged crime or helped in the actual perpetration or participated in it in some way.

Arnold argues that the trial court's failure to add the word "alleged" amounted to a comment by the court that the abuse had in fact occurred, which prejudiced his defense that no abuse occurred. However, the trial court's charge did not vary materially from the pattern charge, which does refer to "the *alleged* crime," nor did the trial court's charge make any implication about what the evidence in this case showed. It merely reflected an accurate statement of law. Further, the trial court explicitly instructed the jury that no ruling or comment by the court was intended to express any opinion about the facts of the case or credibility of the witnesses or the guilt of the defendant. "Because a trial court is not required to instruct the jury in the exact language of a requested charge, especially when the principle of law is covered in another charge, we find no error."[41]
*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED JULY 8, 2010 — 

*Jackson & Schiavone, George T. Jackson,* for appellant.
*Richard A. Mallard, District Attorney, Michael T. Muldrew, Assistant District Attorney,* for appellee.

