A06A0474. PEREZ v. THE STATE.
(633 SE2d 572)

SMITH, Presiding Judge.

Efrain Perez was found guilty by a jury of trafficking in cocaine. Following the denial of his motion for new trial, he appeals. In his sole enumeration of error, Perez contends the trial court erred in denying his motion to suppress. We disagree and affirm.

In reviewing a trial court's decision on a motion to suppress evidence, we adopt the trial court's findings of fact unless they are clearly erroneous, i.e., not supported by any evidence. *Padron v. State*, 254 Ga. App. 265 (562 SE2d 244) (2002). We owe no deference, however, to the trial court's application of the law to undisputed facts. Id. In this case, the relevant facts are not disputed.

Perez was stopped on Interstate 85 by two Carroll County Sheriff's Department deputies because the license plate on the vehicle he was driving was partially obscured. As a deputy approached Perez's SUV, he looked inside and saw a small overnight bag. Perez produced a driver's license and insurance card upon request, and the deputy noticed that the two documents listed different addresses in Texas for Perez. The address on the insurance card was in Brownsville, which the deputy testified is on the Drug Enforcement Administration list of source cities for drug smuggling.

The small bag on the seat and the different addresses aroused the deputy's suspicions. While one deputy checked out Perez's documents and ran the tag number, the other questioned Perez. Perez told the deputy he was on his way to Atlanta to visit his son, but he did not know the address or telephone number of the place where they would meet. The deputy found it very strange that Perez told him he was buying the SUV, but the tag number showed the vehicle was registered to a woman with a completely different address.

The deputy told Perez to step out of his vehicle and he would show him the partially obscured license tag for which he had been stopped, but Perez walked directly past him, straight to the other deputy. Perez then consented to a search of the SUV.

The other deputy looked up at the roof of Perez's SUV and noticed "deep scratch marks in the paint all the way across the backside of the roof," which he recognized as marks left by sandpaper. The deputy believed this was highly suspicious because the vehicle was "brand-new" and he saw no evidence of body work elsewhere on it. He began investigating the roof more closely and found that it sounded solid when tapped, rather than hollow, which is unusual. By pressing down on the roof from the outside and up from the inside, the deputies determined that a gap of approximately six inches existed. They also observed grease on the rubber molding that sealed the door.

Eventually, with Perez's consent, the deputies pulled back part of the headliner, and saw that the inside of the roof had been freshly painted in a color inconsistent with the outside color. They then called for a drug dog. When the dog alerted, they continued their search, pulling down the liner and seeing that a new roof had been installed. They then drilled into the interior roof and pulled out a piece of a ziplock bag. Repositioning the drill, they widened the hole and discovered white powder on the drill bit. When the SUV was taken to the sheriff's department and the roof was opened, 65 kilos of cocaine were found.

Perez does not dispute the validity of the original stop based upon the obscured license tag. Instead, he contends that the later search of his vehicle was unlawful because he should have been allowed to leave at the completion of the traffic stop. He argues that once the traffic stop was over, he was seized within the meaning of the Fourth Amendment because no evidence was presented showing that his license and insurance card were returned to him. Relying primarily upon *State v. Sims*, 248 Ga. App. 277 (546 SE2d 47) (2001), he maintains that he was not free to leave, yet the deputies had no further probable cause, or even an articulable suspicion, to detain him. We disagree for several reasons.

First, one deputy questioned Perez while waiting for the routine check of his license and insurance to be completed, and "mere police questioning does not constitute a seizure." (Citation and punctuation omitted.) *Sims*, supra, 248 Ga. App. at 279. After informing Perez of the traffic violation, the deputies were not prohibited from asking questions about where Perez was going. The inconsistencies in his answers to those questions raised at least an articulable suspicion that Perez might be involved in another crime.

Second, here, as in *Rosas v. State*, 276 Ga. App. 513 (624 SE2d 142) (2005), the deputies' observations during the traffic stop "gave

rise to a reasonable, articulable suspicion of criminal activity other than the traffic violation." Id. at 515 (1) (b). The deputies were therefore authorized to detain and question Perez for reasons related to their suspicions, rather than to the original stop. Id. During the course of the traffic stop, the deputies observed scratches and grease on the roof of the SUV, raising concerns about why body work would be done only on the roof of a car that was practically new. Their experience and training in drug interdiction led them to believe that contraband might be hidden in a compartment in the roof.

Finally, Perez gave the deputies his consent to search his vehicle, which is an exception to the requirement of probable cause. Without suspecting criminal activity, an officer may obtain consent to search a vehicle after a traffic stop is concluded. *Sims*, supra, 248 Ga. App. at 279. Regardless of the deputies' subjective intent, it need only be shown that under the totality of the circumstances the consent was given voluntarily. Id. Here, Perez indicated he was in no hurry, and he raised no objections to the search as long as his SUV was restored to its original condition after the search.

Given the totality of the circumstances here, we conclude the trial court did not err in denying Perez's motion to suppress.

*Judgment affirmed. Ruffin, C. J., and Phipps, J., concur.*

DECIDED JUNE 16, 2006 —
RECONSIDERATION DENIED JULY 3, 2006 — ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Julianne W. Holliday, Gerald P. Word, Jerry F. Pittman*, for appellant.

*Peter J. Skandalakis, District Attorney, Raymond C. Mayer, Assistant District Attorney*, for appellee.