## A09A0247. PINCHERLI v. THE STATE.

(671 SE2d 891)

BLACKBURN, Presiding Judge.

Following a jury trial, Rudy Pincherli appeals his conviction of trafficking in cocaine,[1] contending that (1) the evidence was insufficient to support the verdict, (2) the trial court erroneously denied his motion to suppress in light of an allegedly unlawful detention and search during a traffic stop, and (3) the trial court erroneously charged the jury as to (a) the definition of trafficking, (b) the jury's consideration of evidence of the defendant's statements, and (c) the form of the verdict. Discerning no reversible error, we affirm.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and [the defendant] no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility.

(Punctuation omitted.) Eady v. State.[2] So viewed, the record shows that in January 2002, a sheriff's deputy spotted Pincherli on Interstate 20 driving very closely to the vehicle in front of him. The deputy executed a traffic stop and, upon approaching Pincherli's vehicle, noticed that Pincherli was nervous, breathing hard, and shaking, with his neck visibly pulsing. The deputy also noticed that Pincherli's vehicle, a Dodge pickup truck, had a Texas license plate on the rear, but not on the front, which he found unusual since he correctly believed that Texas law required a front plate. See Tex. Transp. Code Ann. § 502.404 (a) (2002). The deputy informed Pincherli why he had been pulled over and requested Pincherli's driver's license and registration; Pincherli produced his license and the vehicle's insurance information.

The deputy asked how much longer he had to drive and Pincherli answered "four hours." The deputy then told Pincherli to wait as he

---

[1] OCGA § 16-13-31 (a) (1) (C).

[2] Eady v. State, 256 Ga. App. 696 (569 SE2d 603) (2002).

returned to his patrol car and radioed for backup, which arrived in three to four minutes. As the deputy waited, he asked Pincherli to step outside of his truck, inquiring as to who owned the truck, because the insurance information did not match Pincherli's license. Pincherli explained that he was not the owner of the truck. The second deputy arrived, and after the first deputy confirmed that Pincherli understood why he had been stopped, they asked Pincherli for consent to search the truck. After Pincherli said "go ahead," the second deputy asked again in Spanish, and Pincherli again said "go ahead."

Both deputies were familiar with the make and model of the truck and had prior experience with that particular model being used to conceal contraband in hidden compartments in the engine. The second deputy looked under the hood of the truck and noticed unusual signs of tampering on the engine and radiator not consistent with the age of the truck. Further, upon removing the air filter and peering into the carburetor, a deputy noticed a metal box where he knew there should be none on this vehicle. The deputies then asked Pincherli if they could take the truck to an automobile repair shop to further inspect the truck, and Pincherli agreed, riding along unhandcuffed in the back seat of the patrol car.

When they arrived at the shop, Pincherli was allowed to stand freely outside the patrol car. The second deputy inserted a drill bit into a hose connection in the truck's engine and struck a metal surface where he knew there should be empty space. Then, after drilling into the concealed metal surface, the deputy withdrew the bit to find it coated in white powder, which field tested positive for cocaine. (Later lab tests confirmed the positive result.) The deputies then removed the manifold cover and discovered approximately three kilograms of cocaine.

Pincherli was arrested and charged with trafficking in cocaine. Following his unsuccessful motion to suppress the cocaine, Pincherli was found guilty by a jury in 2002 and sentenced to serve the mandatory minimum term of 25 years in confinement. His motion for new trial was denied, giving rise to this appeal.

1. Pincherli contends that the State failed to adequately prove that Pincherli possessed the cocaine found in the truck, arguing that the evidence showed only that Pincherli drove a truck owned by others with equal access to the cocaine it contained. We disagree.

The standard of review for sufficiency of the evidence [in a criminal case] is set out in *Jackson v. Virginia*.[3] The

---

[3] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. In addition, appellant no longer enjoys a presumption of innocence.

(Punctuation omitted.) *Taylor v. State*.[4]

To prove the indicted offense, the State had to show that Pincherli violated OCGA § 16-13-31 (a) (1) (C), which provides as follows:

> Any person who knowingly . . . delivers, or brings into this state or who is knowingly in possession of 28 grams or more of cocaine or of any mixture with a purity of 10 percent or more of cocaine . . . in violation of this article commits the felony offense of trafficking in cocaine. . . . If the quantity of the cocaine or the mixture involved is 400 grams or more, the person shall be sentenced to a mandatory minimum term of imprisonment of 25 years and shall pay a fine of $1 million.

Here, Pincherli focuses on the ownership of the truck and argues that the only evidence that he possessed the cocaine was that he drove the truck in which it was found. He correctly points out that,

> [i]f the only evidence of possession of contraband found in an automobile is that the defendant is the . . . driver . . . of the vehicle, and there is evidence of prior use of the vehicle by other parties in the recent past, or equal access to the accessible portions of the vehicle by other parties, then the prior possession or equal access rule would demand an acquittal. However, if there is additional evidence of possession of contraband by the accused — either circumstantial or direct, other than mere . . . use . . . of the vehicle, then an issue is made for the jury.

(Punctuation omitted.) *Mackey v. State*.[5]

Here, Pincherli's driving of the truck was not the only evidence of his guilt. In a post-arrest interview,[6] Pincherli admitted that he was paid $500 for transporting the truck from Texas, and that he had made the same trip for pay at least once before. Additionally, the

---

[4] *Taylor v. State*, 266 Ga. App. 818 (598 SE2d 122) (2004).

[5] *Mackey v. State*, 234 Ga. App. 554, 555 (507 SE2d 482) (1998).

[6] On appeal, Pincherli does not challenge the voluntariness of his post-arrest statement.

arresting deputy testified that Pincherli was extremely nervous even after he was informed of the routine purpose of the traffic stop: "the defendant, even after he knew what I stopped him for, he was still shaking, breathing hard, his neck was pounding, he kept looking away, as if there was another problem." Accordingly, when viewed in the light most favorable to the verdict, the evidence of Pincherli's compensation for the trip, his having made the same trip at least once prior for pay, and his continued nervous behavior throughout the traffic stop, sufficed to create an issue for the jury as to Pincherli's knowing possession of the cocaine. See *Walker v. State*[7] (evidence of knowing possession was sufficient despite third party's equal access to car when driver was aware of contraband and allowed it to be kept in car). See also *Taylor v. State*;[8] *Townsend v. State*.[9]

2. Pincherli contends that the trial court erred in denying his motion to suppress the cocaine discovered during the vehicle search, arguing that (a) the stop was an unlawful pretext to justify a drug investigation, (b) the deputy lacked probable cause or consent to search the vehicle at the roadside, and (c) the second automobile repair shop search exceeded the scope of the consent. These arguments are without merit.

> When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the appellate court should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility . . . must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citation, punctuation and emphasis omitted.) *Tate v. State*.[10]

(a) *Legality of traffic stop*. With respect to the deputy's authority to execute the traffic stop, even assuming that the deputy intended to investigate a potential narcotics offense, it is well settled that an

[7] *Walker v. State*, 265 Ga. App. 449, 450-451 (1) (594 SE2d 678) (2004).
[8] *Taylor v. State*, 263 Ga. App. 420, 422 (1) (587 SE2d 791) (2003).
[9] *Townsend v. State*, 253 Ga. App. 316, 317 (558 SE2d 849) (2002).
[10] *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

officer's ulterior law enforcement motive does not preclude him, under Fourth Amendment law, from lawfully executing a traffic stop when he observes a traffic violation. See *Whren v. United States*;[11] *Thomas v. State*.[12] Therefore, "[s]ince the [deputy] had observed defendant violate a traffic law [by following too closely], the stop [itself] did not violate the Fourth Amendment or the Georgia Constitution." *Cotton v. State*.[13] See OCGA § 40-6-49 (a).

(b) *Legality of roadside search*. It is clear that, having stopped the truck, the deputy lacked probable cause to immediately search the truck, despite Pincherli's nervous behavior. Cf. *Mackey v. State*, supra, 234 Ga. App. at 555. However, "once the [vehicle] was legally stopped, [the deputy] could ask for [Pincherli's] consent to search the [vehicle]. No additional probable cause or articulable suspicion was required to simply ask the question." (Punctuation and footnote omitted.) *Thomas v. State*, supra, 289 Ga. App. at 162. See *Salmeron v. State*[14] ("[t]he Fourth Amendment is not violated when, during the course of a valid traffic stop, an officer questions the driver or occupants of a vehicle and requests consent to conduct a search"); *Matthews v. State*[15] ("[i]f a driver is questioned and gives consent while he is being lawfully detained during a traffic stop, there is no Fourth Amendment violation") (punctuation omitted).

The record shows that shortly after Pincherli was pulled over, the deputies asked twice for consent to search the truck, once in English and again in Spanish, and the deputies did not discern (nor did Pincherli indicate) any lack of understanding on the part of Pincherli, who answered "go ahead" in English. The request for consent came only a short time into the traffic stop, and the deputies made no deception, threat, or display of force. Under these circumstances, Pincherli's consent was valid, and, having obtained the consent, the deputies were then authorized to search the truck at the roadside. See *Smith v. State*.[16]

(c) *Legality of search at the automobile shop*. With respect to the scope of the ensuing search, we discern no undue intrusion.

> The scope of a consent to search must be measured by all of the circumstances and not only what a person says in response to a request. The type, duration, and physical zone of intrusion is limited by the permission granted, and only

[11] *Whren v. United States*, 517 U. S. 806, 813 (II) (A) (116 SC 1769, 135 LE2d 89) (1996).

[12] *Thomas v. State*, 289 Ga. App. 161, 162 (657 SE2d 247) (2008).

[13] *Cotton v. State*, 237 Ga. App. 18 (513 SE2d 763) (1999).

[14] *Salmeron v. State*, 280 Ga. 735, 736 (1) (632 SE2d 645) (2006).

[15] *Matthews v. State*, 294 Ga. App. 836, 838 (2) (670 SE2d 520) (2008) (whole court).

[16] *Smith v. State*, 165 Ga. App. 333, 334-335 (2) (299 SE2d 891) (1983).

that which is reasonably understood from the consent may be undertaken. The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness — what would the typical reasonable person have understood by the exchange between the officer and the suspect?

(Punctuation omitted.) *Allison v. State.*[17]

Here, the deputies' initial request for consent was a general one. After Pincherli agreed, the deputies looked in the cab of the truck and under the hood. At no time did Pincherli object or withdraw his consent and the initial search was not unduly long. Thus, under these circumstances, merely looking under the hood was not beyond the scope of the deputies' general request for consent to search the truck. See *Allison v. State*, supra, 293 Ga. App. at 448-449; *Smith v. State*, supra, 165 Ga. App. at 334-335 (2).

There was evidence at the suppression hearing and at trial that, upon opening the hood and noticing in plain view uncharacteristic engine tampering on a vehicle type which the deputies knew, based on experience, had been used to conceal contraband, the deputies again asked for consent to do a more thorough search of the engine at a repair shop. See *State v. Gunter*[18] ("we must adopt the trial court's findings of fact . . . unless they are clearly erroneous"). Pincherli responded that he "had no problem" with moving the truck to a repair shop for additional investigation. Pincherli was allowed to accompany the deputies and stand freely and unhandcuffed outside of the patrol car during the repair shop search, and at no time did he resist or attempt to intervene or indicate his unwillingness for the search to continue. Under these facts, we conclude that the officers did not exceed the scope of Pincherli's consent. See *Perez v. State.*[19]

3. Pincherli next contends that the trial court erred by improperly instructing the jury (a) on the definition of trafficking in a manner different from that charged in the indictment, (b) as to how the jury should consider evidence of statements made by the defendant, and (c) as to the form of the jury's verdict. We disagree.

> In reviewing an allegedly erroneous jury instruction, we apply the plain legal error standard of review. A jury charge must be considered as a whole and the parts read in conjunction with each other. Where a charge as a whole

---

[17] *Allison v. State*, 293 Ga. App. 447, 448 (667 SE2d 225) (2008).
[18] *State v. Gunter*, 249 Ga. App. 802, 803 (549 SE2d 771) (2001).
[19] *Perez v. State*, 280 Ga. App. 241, 243 (633 SE2d 572) (2006).

substantially presents issues in such a way as is not likely to confuse the jury even though a portion of the charge may not be as clear and precise as could be desired, a reviewing court will not disturb a verdict amply authorized by the evidence.

(Citations and punctuation omitted.) *White v. State.*[20]

(a) *Potential discrepancy between indictment and jury charge as to definition of trafficking.* The indictment accused Pincherli of "knowingly possess[ing] four hundred (400) or more grams of a mixture containing at least ten percent (10%) Cocaine. . . ." At trial, the jury charge on trafficking included the following additional, emphasized language (which was taken from the statute): "Any person who *knowingly delivers or brings into this State,* or who is knowingly in possession of four hundred grams or more of cocaine, or any mixture with a purity of ten percent or more of cocaine, commits the offense of trafficking in cocaine." (Emphasis supplied.) See OCGA § 16-13-31 (a) (1). Thus, as correctly asserted by Pincherli, the jury charge included a method for committing the offense, knowingly delivering or bringing cocaine into the state, that was not included in the indictment.

However, we note at the outset that Pincherli's written charge request included the very language (delivering or bringing into the state) he finds objectionable on appeal. Although Pincherli reserved his objections to the jury charge as given, "[i]nduced error is impermissible." *Edwards v. State.*[21] See *Edmond v. State.*[22] As Pincherli requested the challenged language, "any error in the charge was induced and cannot now be relied upon to seek a reversal." *Brown v. State.*[23]

(b) *Trial court's instruction as to how the jury should consider evidence of statements made by the defendant.* Making the same argument as in *McKenzie v. State,*[24] Pincherli "complains of the court's instruction to the jury to consider with great care and caution the evidence of any statement made by the defendant. Because [Pincherli's] statement was exculpatory, he argues that the court's instruction prejudiced him." As in that case, we are sympathetic to the argument and caution against such jury charges,[25] but we

---

[20] *White v. State*, 291 Ga. App. 249, 251 (661 SE2d 865) (2008).

[21] *Edwards v. State*, 235 Ga. 603, 604 (2) (221 SE2d 28) (1975).

[22] *Edmond v. State*, 267 Ga. 285, 287 (3) (476 SE2d 731) (1996).

[23] *Brown v. State*, 262 Ga. 833, 834 (4) (426 SE2d 559) (1993).

[24] *McKenzie v. State*, 293 Ga. App. 350, 352-353 (3) (667 SE2d 142) (2008).

[25] We reiterate the suggestion in *McKenzie v. State* that the preferred practice is to modify the instruction "to refer to incriminatory statements only, i.e., admissions and confessions." Id. at 353 (3).

likewise find no reversible error in light of the full context of the jury charge.

The alleged error occurred during the trial court's charge on the evidence of Pincherli's post-arrest statement.

> The court explained that before the jurors could consider this evidence for any purpose, they had to find that [Pincherli] was warned of his constitutional rights and that he knowingly and intelligently waived those rights. The court informed the jurors that the burden was on the state to prove these things. [Quoting the Suggested Pattern Jury Instruction, t]he court further instructed the jurors:

> *You should consider with great care and caution the evidence of any statement made by the defendant.* A defendant's statement unsupported by any other evidence is not sufficient to justify a conviction. You must determine whether or not any other evidence sufficiently supports the defendant's statement so as to justify a conviction.

> It is a fundamental rule in Georgia that jury instructions must be read and considered as a whole in determining whether the charge contained error. The challenged instruction here . . . was given immediately after an explanation of how to determine the admissibility of [Pincherli's] custodial statement, and was followed by directions that a defendant's statement unsupported by other evidence is not sufficient to justify a conviction and that other evidence must sufficiently support the defendant's statement to justify a conviction. Therefore, taken in the context of the charge as a whole, the complained-of portion of the charge would have been interpreted by a reasonable juror as referring to his or her consideration of [Pincherli's] custodial statement for inculpatory rather than exculpatory purposes and, therefore, was not prejudicial to him.

(Punctuation and footnotes omitted; emphasis in original.) *McKenzie v. State*, supra, 293 Ga. App. at 352-353 (3).

(c) *Trial court's instruction as to the form of the verdict.* Pincherli contends that the trial court's instruction as to the form of the verdict was misleading, because it lacked a specific statement that the jury could find Pincherli not guilty if the jury had a reasonable

doubt. Pincherli relies on *Laster v. State*,[26] which addressed a situation, different from the one here, where the trial court's jury charge failed to provide any instruction as to how the jury should formulate its verdict upon a finding of not guilty. In that case, the Supreme Court granted a new trial, because the trial court "gave no guidance whatsoever of how the jury's verdict should read if the jury found that the State failed to carry its burden of proving [the defendant's] guilt beyond a reasonable doubt, even though defense counsel advised the court of its omission."

Here, by contrast, the trial court (having instructed the jury as to the State's burden to prove the elements of the offense beyond a reasonable doubt) instructed the jury as follows:

> "If you should find the defendant not guilty[,] in that event, then the form of your verdict would be, 'We, the jury, find the defendant not guilty.' . . . On the other hand, if you find that the defendant is guilty, then in that event, the form of your verdict would be, 'We, the jury, find the defendant guilty.'"

Thus, unlike in *Laster v. State*, the jury was informed as to how to formulate its verdict upon a not guilty finding.

> Where a charge as a whole substantially presents issues in such a way as is not likely to confuse the jury even though a portion of the charge may not be as clear and precise as could be desired, a reviewing court will not disturb a verdict amply authorized by the evidence. There is no error where it is unlikely that the instructions considered as a whole would mislead a jury of ordinary intelligence.

(Punctuation omitted.) *McClendon v. State*.[27] Accordingly, we discern no reversible error here.

*Judgment affirmed. Ruffin and Adams, JJ., concur.*

DECIDED DECEMBER 31, 2008.

*Zell & Zell, Rodney S. Zell*, for appellant.

---

[26] *Laster v. State*, 276 Ga. 645, 650 (5) (581 SE2d 522) (2003).
[27] *McClendon v. State*, 287 Ga. App. 238, 243 (7) (651 SE2d 165) (2007).

*Peter J. Skandalakis, District Attorney, Anne C. Allen, Assistant District Attorney*, for appellee.