## A08A1937. McBEE v. THE STATE.

(673 SE2d 569)

DOYLE, Judge.

Following a jury trial, Douglas Steven McBee was convicted of possession of methamphetamine,[1] giving a false name to a law enforcement officer,[2] and carrying a concealed weapon.[3] McBee appeals from the order denying his motion for new trial, contending that the trial court erroneously denied his motion to suppress. He also challenges the sufficiency of the evidence. Discerning no reversible error, we affirm.

On appeal from a criminal conviction, we construe the evidence in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence.[4] "[W]e do not weigh the evidence or assess witness credibility, but determine whether a rational trier of fact could have found all the elements of the crime present beyond a reasonable doubt."[5]

So viewed, the record shows that Lieutenant Wayne Cooley and another officer from the Pickens County Sheriff's Department went to a residence to serve an arrest warrant on Daniel Lewis. When they searched the trailer for Lewis, the officers discovered what they believed to be a methamphetamine laboratory. The police evacuated the trailer and requested assistance from the Drug Task Force, which

---

[19] 280 Ga. at 735.

[20] Id. at 738-739 (1). See also *Matthews*, 294 Ga. App. at 839 (2) (c).

[1] OCGA § 16-13-30 (a).

[2] OCGA § 16-10-25.

[3] OCGA § 16-11-126 (a).

[4] See *Stearnes v. State*, 261 Ga. App. 522 (1) (583 SE2d 195) (2003).

[5] Id.

arrived in an unmarked box van and parked near the two patrol cars outside the residence.

The female resident of the trailer advised Cooley that Lewis was not at home, but was expected to return shortly. She did not give the officer a description of the man or his vehicle; Cooley testified that the only description he had of Lewis was that he was a white male. While Cooley was standing outside the trailer along with the female resident, another uniformed officer, and two members of the Drug Task Force, he observed a Lincoln Towncar approach the residence and slow down, as if the driver "wanted to stop." Once the car passed the trailer, the driver "went by very quickly[,] . . . exceed[ing] the speed limit," and drove away. Cooley estimated that the vehicle was traveling at least 30 to 35 miles per hour; the speed limit in that area was 15 miles per hour.

At the suppression hearing, Cooley testified that because he was expecting Lewis to return to the trailer and based on the slow approach and "the way [the driver of the vehicle] drove off," he believed the driver was Lewis, the man he was seeking for the warrant. Accordingly, the officer immediately pursued the vehicle in his patrol car. Cooley testified that he had to speed to catch up to the car, driving between 50 and 60 miles per hour; he went through zones for which the maximum speeds were 15, 25, and 35 miles per hour. Approximately one-and-a-half to two miles from the trailer, Cooley initiated a traffic stop of the Lincoln. The vehicle continued on for approximately half a mile before coming to a stop.

Cooley approached the driver and asked him for his license and proof of insurance. The driver, Donny Kirby, immediately advised the officer that he did not have a license and that he had never had one. Cooley also asked the passenger — later identified as McBee — whether he had a license, and McBee responded that he had one, but did not have it with him. According to Cooley, McBee "wouldn't sit still. He kept reaching around the seat and under his butt. I asked him to sit still and keep his hands out from under the seat and out from under him." McBee failed to comply, which made Cooley "very" nervous. Instead, he told the officer that he was looking for a lighter.

Cooley then placed Kirby in the back seat of the patrol car. While he did so, the officer observed that McBee was continuing to "move about in his seat." Cooley asked McBee to exit the vehicle, advising him that he was going to pat him down for weapons "for [the officer's] safety and [McBee's]." Before he began, Cooley asked McBee whether he had any weapons, and McBee advised that he had a syringe in his right front pocket. The officer removed the syringe, continued the pat-down, and found a set of brass knuckles in McBee's back pocket. Cooley also searched the vehicle "in the immediate area where [McBee] was sitting [for] weapons." Under the front

passenger seat near the door, Cooley found a lighter and a pipe that ultimately tested positive for methamphetamine. Cooley also learned that McBee had given him a false name, and when questioned, McBee stated that he did so because there was a warrant for his arrest.[6]

McBee was arrested and charged with possession of methamphetamine, giving a false name to a law enforcement officer, and carrying a concealed weapon. He filed a motion to suppress the evidence, which the trial court denied following a hearing. After the jury found him guilty on all three counts, McBee moved for a new trial, and the trial court denied the motion. This appeal followed.

1. McBee contends that the trial court erred in denying his motion to suppress. Specifically, he argues that the officer's traffic stop of the vehicle was not based on a reasonable, articulable suspicion and was therefore illegal.[7] We disagree.

"When reviewing a ruling on a motion to suppress, where, as here, the evidence is uncontroverted and there exists no question regarding witness credibility, we review de novo the trial court's application of the law to the facts presented."[8] In so doing, "we construe all evidence presented in favor of the trial court's findings and judgment, and we will not disturb the trial court's order on a motion to suppress if there is any evidence to support it."[9]

McBee maintains that Kirby's actions in slowing down as he approached the residence where Cooley and the other officers were located and then speeding away did not provide Cooley with the requisite particularized basis for suspecting Kirby or his passenger of criminal activity so as to justify the traffic stop. But pretermitting whether Kirby's actions in passing the residence warranted an investigative stop based on Cooley's belief that the man he was seeking was in the vehicle, the traffic stop was authorized based on the officer's observation that the vehicle exceeded the maximum speed limit.

Even if Cooley initiated the traffic stop to investigate whether Lewis was in the vehicle, "it is well settled that an officer's ulterior law enforcement motive does not preclude him, under Fourth Amendment law, from lawfully executing a traffic stop when he observes a traffic violation."[10] Here, because Cooley observed the

---

[6] Cooley testified that there was a warrant for McBee's arrest for a probation violation.

[7] This is McBee's sole argument on appeal regarding suppression.

[8] *State v. Torres*, 290 Ga. App. 804, 805 (660 SE2d 763) (2008).

[9] (Citation and punctuation omitted.) Id.

[10] *Pincherli v. State*, 295 Ga. App. 408, 411-412 (2) (a) (671 SE2d 891) (2008). See *Wren v. United States*, 517 U. S. 806, 810-813 (II) (116 SC 1769, 135 LE2d 89) (1996); *Thomas v. State*, 289 Ga. App. 161, 162 (657 SE2d 247) (2008); *State v. Owens*, 239 Ga. App. 722, 723 (521

driver of the vehicle violate a traffic law by speeding, the stop was not illegal.[11]

Contrary to McBee's argument, the fact that Cooley did not issue Kirby a traffic citation for speeding is immaterial, as "[t]he underlying validity of an investigatory stop of a vehicle does not hinge upon whether charges are brought for observed traffic offenses."[12] Further, McBee's argument that Cooley's failure to use mathematical calculations or radar to estimate Kirby's speed is without merit, as an officer's visual estimate may be used to establish speed.[13]

Thus, for the foregoing reasons, we conclude that the trial court did not err in denying McBee's motion to suppress.[14]

2. McBee also challenges the sufficiency of the evidence. Having reviewed the record, we hold that the evidence was sufficient to sustain the jury's verdict.

(a) McBee alleges that the evidence was insufficient to support his conviction for possession of methamphetamine, arguing that the State "failed to establish that [McBee] ever exercised possession or control, or even had knowledge of the presence of, any methamphetamine on the date in question." This argument is unpersuasive.

McBee correctly cites *Mitchell v. State*[15] for the proposition that "[a] finding of constructive possession of contraband cannot rest upon [a passenger's] mere spatial proximity to the contraband, especially where . . . the contraband is hidden."[16] Here, contrary to McBee's argument, the contraband found in the vehicle in which McBee was traveling is not the only evidence offered by the State to prove that he possessed the methamphetamine.

> Beyond a defendant's spatial proximity to the drugs, constructive possession may be shown by demonstrating the defendant knowingly had both the power and intention at a given time to exercise control over the substance. Power may be inferred from access to the drugs, while the matter of intent may be derived from the surrounding circumstances.[17]

Here, the methamphetamine was found under the passenger seat

SE2d 860) (1999).

[11] See *Pincherli*, 295 Ga. App. at 412 (2) (a).

[12] *Faulkner v. State*, 277 Ga. App. 702, 705 (1), n. 4 (627 SE2d 423) (2006).

[13] See *Jackson v. State*, 223 Ga. App. 27, 28 (2) (477 SE2d 28) (1996); *Brown v. State*, 204 Ga. App. 629 (420 SE2d 35) (1992).

[14] See *Owens*, 239 Ga. App. at 723.

[15] 268 Ga. 592 (492 SE2d 204) (1997).

[16] Id. at 593.

[17] (Footnote omitted.) *In the Interest of Q. P.*, 286 Ga. App. 225, 226-227 (648 SE2d 731) (2007).

where McBee was sitting. Cooley testified that McBee was moving his hands around while sitting in the vehicle and refused to comply with the officer's instructions that he keep his hands out from beneath his seat. Moreover, the methamphetamine was found in a pipe located next to a lighter, and McBee — when he was moving around in the vehicle — told the officer that he was looking for a lighter. Finally, when Cooley conducted the patdown, he found a syringe in McBee's pocket. Because this evidence was sufficient to establish that, at a minimum, McBee had constructive possession of the methamphetamine, the evidence was therefore sufficient to find McBee guilty beyond a reasonable doubt of possession of methamphetamine.[18]

(b) It is unclear whether McBee intends to challenge the sufficiency of the evidence with regard to his convictions for giving a false name to law enforcement and possession of a concealed weapon. Although his enumerations alleging that the verdict was contrary to the evidence and principles of justice do not specify which convictions he seeks to challenge, the argument portion of his brief addressing the sufficiency of the evidence is clearly limited to his conviction for possession of methamphetamine. Thus, by failing to support them with cogent argument or citation of authority, McBee has waived any challenges to the sufficiency of the evidence with regard to the guilty verdicts for giving a false name to law enforcement and possession of a concealed weapon.[19]

Nevertheless, we have reviewed the record and conclude that the jury was authorized to find McBee guilty beyond a reasonable doubt of giving a false name to law enforcement and possession of a concealed weapon.[20]

*Judgment affirmed. Andrews, P. J., and Bernes, J., concur.*

DECIDED FEBRUARY 12, 2009.

*Laura K. Willcox*, for appellant.
*Joe W. Hendricks, Jr., District Attorney, David V. Rhoden, Assistant District Attorney*, for appellee.

---

[18] See id. at 227; *Hulsey v. State*, 284 Ga. App. 461, 462 (1) (643 SE2d 888) (2007).

[19] See *Hicks v. Newman*, 283 Ga. App. 352, 353 (641 SE2d 589) (2007) ("failure to provide any cogent argument or citation of authority in support of . . . alleged error constitutes waiver").

[20] See OCGA §§ 16-10-25; 16-11-126 (a).