**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**RICKMAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 9, 2021**

# In the Court of Appeals of Georgia

A21A0090. JONES v. THE STATE.

RICKMAN, Presiding Judge.

Herbert Jones was tried by a jury and convicted of rape. He subsequently moved for a new trial on numerous grounds, and following a hearing, the trial court denied the motion. Jones now appeals and contends that a jury instruction about his out-of-court statement was erroneous and that his trial counsel provided ineffective assistance in requesting it. For reasons that follow, we affirm.

The evidence at trial showed that in March 2016, Jones was at a bar and ran into two acquaintances, one male and one female, who both knew him as Flash. The acquaintances were with the victim, who was visiting from Brazil, and the three of them had previously been to two other bars where they had consumed alcoholic beverages. At approximately 3:00 or 4:00 a.m., Jones, the two acquaintances, and the

victim all went back to the victim's boyfriend's studio apartment, where the male acquaintance was house sitting.[1] They were talking and listening to music and at some point, Jones laid down on a hammock in the apartment and fell asleep. Jones later got into the only bed in the apartment. The victim fell asleep in the bathroom, and the female acquaintance later moved her into the other side of the bed.

While the two acquaintances were on the couch "fooling around" under a sheet, they heard keys jingling and looked up to see Jones, completely naked, on his knees, holding the victim's leg over his shoulder and making slow thrusting movements toward her while she was passed out. During the act, the naked buttocks of both Jones and the victim were visible.[2] Both acquaintances testified that they had no doubt about what they were seeing and that they both shouted out, "What's going on?," at which point Jones rolled away as if he was asleep and did not move. The male acquaintance then went to a neighbor's house and had the neighbor call the police.

When police officers arrived, the victim remained still and unresponsive for approximately 30 minutes, despite several attempts to wake her, and only became

---

[1] Another male also went back to the apartment with the group, but he left after approximately 30 minutes.

[2] When the victim woke up, she was fully clothed.

responsive when smelling salts were placed under her nose. The victim did not remember anything between the time she went into the bathroom to sleep and when she was awakened, but did not consent to any sexual contact with Jones or anyone else.

The victim was taken from the apartment to the hospital, where a physician assistant conducted a sexual assault examination and discovered bruises on the victim's thigh that the victim did not recall having the day before. During the examination, the physician assistant obtained vaginal and cervical swabbings, which were submitted for testing. A DNA analyst from the Georgia Bureau of Investigation, Division of Forensic Sciences, analyzed the swabs as well as buccal swabs from Jones and determined that the vaginal swab contained DNA matching Jones or his paternal male relatives.

An investigator with the City of Decatur police department interviewed Jones at the police department, and the State played a recording of that interview at trial. During the interview, Jones stated that, on the night in question, he was at a bar where he had some beers and shots and ran into the male acquaintance, who invited him to a condominium where they continued drinking and listening to music. He got sleepy and laid down in a bed. When he woke up, a female was in bed with him, passed out,

3

and the male and female acquaintances were both upset, but he did not know why, and then the police arrived. Jones denied any sexual contact with the victim and stated that there would be no reason for his DNA to be in or on her.

Jones filed a motion for new trial in which he asserted that the verdict was contrary to the law and the evidence and strongly against the weight of the evidence and that errors of law were committed during trial that required a reversal of his conviction. In an amended motion for new trial, Jones claimed that his trial counsel was ineffective in several respects and that the trial court had committed plain error in instructing the jury to consider his out-of-court statement "with great care and caution." Following a hearing, the trial court denied the motions on all grounds asserted.

1. Jones contends that a jury instruction about his out-of-court statement was erroneous, but after the jury was charged, Jones specifically stated that he had no objections to the charge. OCGA § 17-8-58 (b) precludes appellate review of challenges to the jury charge where the defendant has failed to object to any portion of the charge to the jury in accordance with OCGA § 17-7-58 (a), which requires a party to inform the court of the specific objection and the grounds for such objection. See *Blankenship v. State*, 301 Ga. App. 602, 606 (4) (688 SE2d 395) (2009). OCGA

4

§ 17-8-58 (b) does provide an exception if the challenged portion of the jury charge constitutes plain error which affects substantial rights of the parties, but Jones has waived plain error analysis of this issue because he requested the charge in question. See *Pena v. State*, 297 Ga. 418, 424 (6) (a) (774 SE2d 652) (2015); *Blankenship*, 301 Ga. App. at 606 (4).

2. Jones contends that his trial counsel was ineffective for requesting the jury instruction about his out-of-court statement, which was entirely exculpatory. The challenged instruction informed the jury that:

> You should consider with great care and caution the evidence of any out-of-court statement allegedly made by the defendant offered by the State. . . . A defendant's out-of-court statement that is not supported by any other evidence is not sufficient to justify a conviction even if you believe the unsupported statement. . . . You must determine whether or not evidence sufficiently supports a defendant's statement so as to justify a conviction.

To prevail on a claim of ineffective assistance of counsel, a criminal defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LEd2d 674) (1984). To prove that the performance of his trial counsel was deficient, Jones must show that counsel performed her duties at trial in

5

an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms. Id. at 687-688 (III) (A). To prove that he was prejudiced by the performance of his trial counsel, Jones "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694 (III) (B). Because a defendant must satisfy both prongs of the *Strickland* test, we need not conduct the *Strickland* inquiry in any particular order or even address both components of the test if the defendant makes an insufficient showing on one. See *Dresbach v. State*, 308 Ga. 423, 425 (2) (841 SE2d 714) (2020).

To support his argument that requesting the challenged instruction constituted deficient performance, Jones points to trial counsel's testimony at the motion for new trial hearing that, after reading the amended motion for new trial, she agreed that she had used the wrong charge on that issue. But even if we assume that trial counsel was deficient for requesting the challenged instruction under these circumstances, Jones has failed to establish that there is a reasonable probability that the outcome of the trial would have been different if his counsel had not requested the instruction.

6

In its charge, the trial court cautioned the jury about relying on the out-of-court statement to *convict* Jones. The "great care and caution" portion of the charge was followed by directions that a defendant's statement unsupported by other evidence is not sufficient to justify a conviction and that other evidence must sufficiently support the defendant's statement to justify a conviction. The trial court also instructed the jurors that they had the duty to apply the general rules for the testing or believability of witnesses and to decide what weight should be given to all or any part of such evidence. Taken in context of the charge as a whole, a reasonable juror would have understood the disputed instruction as referring to his or her consideration of Jones's statement for inculpatory rather than exculpatory purposes and would not have understood the disputed instruction to mean that they should be more skeptical of Jones's statements than those of other witnesses. See *Williamson v. State*, 305 Ga. 889, 896 (3) (b) (827 SE2d 857) (2019); *Pincherli v. State*, 295 Ga. App. 408, 415 (3) (b) (671 SE2d 891) (2008); *McKenzie v. State*, 293 Ga. App. 350, 353 (3) (667 SE2d 142) (2008).[3] In light of the charge as a whole and the strength of

_____

[3] We note that this Court has cautioned against giving the "great care and caution" charge when the defendant has made exculpatory statements and recommended that the pattern charge utilizing this language be modified. See *Pincherli*, 295 Ga. App. at 414-415 (3) (b); *McKenzie*, 293 Ga. App. at 352-353 (3). As a result of this recommendation, the charge was omitted from one section of

the evidence of Jones's guilt, we conclude that Jones has failed to show the required prejudice.

*Judgment affirmed. McFadden, C. J., and Senior Appellate Judge Herbert E. Phipps concur.*

---

Georgia's pattern jury instructions for criminal cases. See *Campbell v. State*, 292 Ga. 766, 769 (3) (740 SE2d 115) (2013). But the charge remains as a suggested pattern instruction under the section entitled "Corroboration; Defendant's Statement" and cites as authority OCGA § 24-8-823 ("All admissions shall be scanned with care, and confessions of guilt shall be received with great caution. A confession alone, uncorroborated by any other evidence, shall not justify a conviction."). See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (2021), § 1.32.70. "Consistent with [former] OCGA § 24-3-53 [now OCGA § 24-8-823], and to avoid any possibility for confusion, [we reiterate our suggestion that] the suggested pattern instruction should . . . be modified to refer to incriminatory statements only, i.e., admissions and confessions." *McKenzie v. State*, 293 Ga. App. at 353 (3); see *Pincherli*, 295 Ga. App. at 414 (3) (b), n.25.